**Exhibit A**

PRECEDENT DECISION

BEFORE THE LABOR COMMISSIONER

OF THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| Roi A. Hartwig | ) | |
|        Plaintiff | ) | Case No. 12-56901RB |
| vs | ) | |
| | ) | ORDER, DECISION OR AWARD |
| Orchard Commercial, Inc., | ) | OF THE LABOR COMMISSIONER |
| a California corporation | ) | |
|        Defendant | ) | |

## BACKGROUND

The Plaintiff filed an initial claim with the Labor Commissioner's office on February 5, 2004. The complaint raises allegations of meal period violations for the period January 2002 through December 2003, being 104 violations at various rates of pay, in the amount of $3,112.00, and waiting time penalties pursuant to Labor Code §203.

A hearing was conducted in San Jose, California, on April 26, 2005, before the undersigned-hearing officer designated by the Labor Commissioner to hear this matter. Plaintiff appeared and was represented by attorney Jeffrey Eng. Appearing for Defendant was President Joe Lewis and attorney Tzaddi Smith. Matthew Russell and Melissa Bowman appeared as witnesses, although Bowman was not called to testify.

Due consideration having been given to the testimony, documentary evidence, and arguments presented, the Labor Commissioner hereby adopts the following Order, Decision or Award.

PRECEDENT DECISION

FINDINGS OF FACT

1.  Plaintiff, Roi A. Hartwig, was employed by Defendant, Orchard Commercial, Inc , a California corporation, from January 7, 2002 until his termination on February 4, 2004. Plaintiff was employed as a HVAC Supervisor/Service Technician in Santa Clara County, California, under the terms of a written employment agreement. Plaintiff's initial rate of pay was $28.00 per hour, raised to $30.00 per hour after ninety days of employment and again to $31.80 in January 2004.

2.  Plaintiff was questioned by attorney Eng and testified that when he began working for Defendant, he was the only employee working in HVAC. His job was to take service calls regarding heating and air conditioning problems that arose in buildings managed by Defendant. Plaintiff testified that he was required to respond the day service was requested and each service call took from one to four hours. Plaintiff also testified that he advised his supervisor, Dave Beausoleil that he needed help, that he was working ten to thirteen-hour days and could not take meal periods. Plaintiff testified that Beausoleil's response was that he (Plaintiff) had to sacrifice, that there were people waiting for his job, etc. Plaintiff contends that the days he was the busiest, requiring him to work overtime hours, were the days he was prevented from taking meal periods. Plaintiff testified that he initially missed 85 percent of his meal periods, and after additional employees were hired, missed 25 percent of his meal periods. Plaintiff indicated that another employee was hired in February 2002, giving him some relief, and a third employee in August 2002. Plaintiff acknowledged that supervisor Matt Russell was hired in May 2003, but states Russell did not do field work, so gave no assistance with the workload. Plaintiff testified that he was terminated on February 4, 2004, his final wages were sent to him by certified mail and received on February 9, 2004. Entered into evidence by Plaintiff were spreadsheets indicating dates he worked without meal periods, project sheets for each week indicating the hours worked on each service call, a blank time card (indicating only total hours worked per day are required to be logged) and a copy of his 2003 W-2.

3.  Defendant attorney Smith questioned Plaintiff and Plaintiff acknowledged that he received a company handbook upon hire and that the policy as outlined in the

handbook indicates non-exempt employees are entitled to a 30-60 minute meal period. Plaintiff also acknowledged that the handbook indicates employees do not have the option to waive rest or meal periods, but Plaintiff was adamant that he was instructed by Beausoleil to work through his meal periods to complete the work. Plaintiff testified that he did not discuss the meal period situation with either the office manager or the company president, indicating Beausoleil was his immediate supervisor and the only person with whom he discussed the problem. Plaintiff acknowledged he was working alone during some periods he claims he was not provided meal periods. Attorney Smith entered into evidence a copy of Defendant's handbook, along with Plaintiff's signed acknowledgement of receipt, Plaintiff's offer letter and Plaintiff's weekly time sheets indicating total daily hours without indication of meal periods received.

4. As follow-up, attorney Eng questioned Plaintiff and Plaintiff again testified that he did not follow the handbook due to instructions he was given by Beausoleil, and that Beausoleil's only response was that Plaintiff needed to sacrifice, etc. Plaintiff indicated that the need to work through his meal period and complete the service calls as soon as possible was exacerbated due to Defendant being the property manager on the buildings where the work was being performed and the need to please the property residents.

5. Matthew Russell, witness for Defendant, was questioned by attorney Smith and testified that he was hired by Defendant June 1, 2003, and was Plaintiff's supervisor from that point forward. Russell testified that Plaintiff was the lead technician, and that he spoke to Plaintiff almost every day, giving Plaintiff assignments, which he then gave to the other technicians, deciding the order of the jobs. Russell indicated that the work hours were 7:30 a.m. to 4:00 p.m. and an employee was free to return to the job site the following day to complete any work that could not be completed within this time frame. Russell testified that he was not aware Plaintiff was not getting meal periods and had he known, would have corrected the situation.

6. Attorney Eng questioned Russell and Russell testified that he did not see Plaintiff on a daily basis, that meal periods were not on a fixed schedule and he did not accompany employees into the field. Russell agreed that he had no knowledge regarding how busy Plaintiff was prior to his own hire. Russell acknowledged that the work done

by Plaintiff was more urgent in extreme weather.  Russell also acknowledged that he overheard Beausoleil telling technicians about the need to sacrifice for the company, but was not aware of the context of the conversation.

7.  As further follow-up, attorney Eng questioned Plaintiff and Plaintiff testified that he was not allowed to start a job one day and return the following day to complete the work.  Plaintiff also testified that he rarely saw Russell in the field, and that by the time Russell was hired, he had more help and was able to take meal periods 75 percent of the time.  Additionally, Plaintiff stated that even after Russell's hire, he was advised by Beausoleil that he (Plaintiff) still reported directly to Beausoleil.

8.  In closing, attorney Smith offered a legal brief regarding her assertion that the additional one hour of pay for failure to provide a meal period is a penalty, and therefore, a one year statute of limitations applies.  Smith also asserts that waiting time penalties are not applicable.

9.  In closing, attorney Eng asserts that the additional one hour of pay is wages and that based upon the situation outlined where Plaintiff voiced his concerns regarding his meal periods and corrections were not made, non-payment is willful and waiting time penalties apply.

## LEGAL ANALYSIS

1.  Labor Code §226.7 provides that no employer shall require any employee to work during any meal or rest period mandated by an applicable Order of the Industrial Welfare Commission (IWC).[1]  Section 512 sets the minimum standards which employers must meet in providing meal periods to employees.  Section 226.7 further provides that if the employer fails to provide an employee with the meal and rest period as required by the IWC Order, that the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

2.  Defendant's business is subject to IWC Order 4-2001 regulating wages, hours and

---

[1] In the event of a conflict between the language contained in the relevant Labor Code Section and the language contained in the Wage Orders of the Industrial Welfare Commission, the language contained in the Labor Code controls  This issue is not raised by the parties here and, therefore, is not decided

working conditions in Professional, Technical, Clerical, Mechanical and Similar Occupations. Section 11(A) of the Order provides: No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the days work the meal period may be waived by mutual consent of the employer and the employee.

Section 11(D) of the Order provides: If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

3. Section 7(A)(3) of the Order requires every employer to keep accurate time records showing when the employee begins and ends each work period. This section also requires that meal periods be recorded. Defendant's records are inadequate as they do not reflect beginning and ending times, nor do they reflect meal periods.

4. Although Defendant's handbook outlines their policy to provide meal periods, Beausoleil's statement regarding sacrificing for the company, as testified to by Plaintiff and overheard by Russell, supports Plaintiff's allegation that the policy was not always enforced by management. Additionally, the time records do not indicate Plaintiff was provided meal periods. Based upon the evidence, finding is that Plaintiff was not provided meal periods as required.

5. The amount that is owed to plaintiff for missed meal periods will be determined by whether the payment is characterized as a penalty or a wage. If the payment is a wage, the three year statute of limitations would apply for a statutory claim (Code of Civil Procedure §338). If the payment is a penalty, the one year statute of limitations for a penalty would govern (Code of Civil Procedure §340).[2]

6. The language of Labor Code §226.7, and the comparable language in the IWC Order, is not clear as to whether the additional hour of payment is a penalty or a wage.

---

[2] Code of Civil Procedure Section 340(a) provides for a one year statute of limitations for an action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute

The varied decisions by the courts are evidence of this fact. A recent federal district court decision in *Tomlinson v. Indymac Bank*, 2005 WL 46291 (C.D.Cal.February 18, 2005), concluded that the Section 226.7 payment is a wage, whereas a tentative opinion by the Fourth District Court of Appeals in the case of *Orco Block v. Superior Court (Degonia)* E036955, concluded that the one hour of pay is a penalty. Instructive, however, is the definition of *Wages* in Labor Code §200, stating that wages include ". . .all amounts for labor (personally) performed by employees . . .", which is clearly distinguishable from a payment of one hour of pay for the failure to provide a 30-minute unpaid meal period. "The statutory penalty . . . referred to [in Code of Civil Procedure §340, subdivision (1)] is one which an individual is allowed to recover against a wrong-doer, as a satisfaction for the wrong or injury suffered, and without reference to the actual damage sustained, or one which is given to the individual and the state as a punishment for some act which is in the nature of a public wrong." *Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1242, quoting *County of Los Angeles v. Ballerino* (1893) 99 Cal 593, 596. Here, the same amount is payable, i.e., one hour per day, regardless of the number of violations per day or the fact that the meal period was not of sufficient duration or not granted at the correct time. Therefore, the payment is not for the actual losses incurred by the worker, but is to deter an employer from failing to comply with the regulation.

7. The issue then is whether the payment under Section 226.7 is meant to enforce the meal (and rest) period requirements of the IWC Orders, in which case it would be a penalty; or whether it is meant to compensate the employee for actual labor performed, in which case it would not be a penalty. In 1999, the Legislature passed Assembly Bill 60, which codified the meal period requirement in Labor Code §512(a). In 2000, the Industrial Welfare Commission added the provisions in Section 11, which provides for an additional hour of pay to an employee who was not provided his or her meal period (and Section 12, which provides for an additional hour of pay if an employee was not authorized or permitted to take his rest period). At the IWC hearing in which these provisions were discussed, it was clear that the concern of the Commissioners was that there was currently

imposing it prescribes a different limitation

PRECEDENT DECISION

nothing in place that would ensure compliance with the meal (and rest period) requirements, other than the use of an injunction which was not a meaningful remedy.[3] The purpose, therefore, of the initial provision relating to the one hour of pay, was to enforce the requirements and to deter non-compliance clearly indicating intent to create a penalty. Labor Code §226.7, likewise, was based on the IWC Order language and its purpose is to deter employers from violating IWC imposed rules for meal breaks. Determination is that the payment for missed meal periods is a penalty.

8. Based upon this determination, the one year statute of limitation applies. Plaintiff may only recover penalties from February 5, 2003, one year prior to the date of the claim being filed with the Labor Commissioner of February 5, 2004, through the period of Plaintiff's claim of December 2003. Finding is that Plaintiff was not provided meal periods on twenty-nine occasions, due at the rate of $30.00 per hour. Plaintiff takes $870.00 on this issue.

9. Labor Code §201 provides that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

10. Labor Code §203 provides if an employer willfully fails to pay any earned wages of an employee in accordance with Section 202, the wages of such employee shall continue as a penalty from the due date thereof at the same rate until paid, up to thirty days. Willful as used in Section 203 does not require malice or blamable conduct, but merely that the failure to pay was intentional. Intentional as defined by the statute and case law does not mean with evil intent, but simply that the employer knows such wages are due and fails to pay them. Unlike the criminal violations which may arise under the law for failure to pay wages, the civil penalty assessed under Labor Code Section 203 does not require that the employer intended the action; merely that the action occurred and it was within the employer's control. *Davis v. Morris*(1940) 37 Cal.App.2d 269. Plaintiff was terminated on February 4, 2004 and did not receive payment of final wages until February 9, 2004. Therefore, Plaintiff is due five days waiting time penalties at his daily rate of $254.40 ($31.80 per hour for an eight hour day), being $1,272.00. Additional

---

[3] See,e.g. Statement as to Basis of Interim Wage Order, October 2000, the one hour payment requirements were adopted due to a "lack of employer compliance with the meal and rest period requirements of the wage orders."

PRECEDENT DECISION

payment awarded Plaintiff is penalties for meal period violations and waiting time penalties are not applicable.

CONCLUSION

For all of the reasons set forth above, IT IS HEREBY ORDERED that the Defendant shall pay Plaintiff as follows:

1.  $870.00 in penalties for meal periods not provided; and

2.  $1,272.00 in penalties pursuant to Labor Code §203.

Dated: May 11, 2005                    /s/ Denise Padres

                                       Denise Padres
                                       Hearing Officer

**Exhibit B**

AB 2509
Page 1

Date of Hearing:  April 12, 2000

ASSEMBLY COMMITTEE ON LABOR AND EMPLOYMENT
Darrell Steinberg, Chair
AB 2509 (Steinberg) – As Introduced: February 24, 2000

SUMMARY: Revises statutes relating to the administrative and civil enforcement of wage and hour laws including wage collection and enforcement procedures before the Labor Commissioner (Commissioner) Specifically, this bill:

1) Provides that in an administrative wage claim proceeding (Berman hearing) before the Commissioner, a notice for production of documents, which is served by mail, may be used in lieu of subpoena, which requires personal service.

2) Provides that the legal rate of interest on due and unpaid wages at a Berman hearing shall be at the rate established by Civil Code Section 3289(b), which is 10%.

3) Provides that following a Berman hearing, an employer filing an appeal shall post an undertaking in the amount of the Commissioner's final order, decision or award. Provides further that the requirement of judicial arbitration does not apply in such proceedings. Provides that in cases where the Commissioner represents the wage claimant in such proceedings, the Commissioner may be awarded attorneys fees in the same manner as private counsel representing a wage claimant.

4) Provides if the United States Department of Labor (Labor Department) determines that the Commissioner has erred in dismissing the complaint of an employee of unlawful retaliation, as specified, the Commissioner shall, within 15 days after receipt of the Labor Department's determination, either notify the parties of the ongoing of the investigation of the employees complaint, or shall issue a new determination in the matter.

   Provides that an employer may file a civil action for unlawful retaliation, as specified, without first filing a discrimination claim before the Commissioner, and that the limitation periods for such administrative remedies do not apply in such a civil action.

5) Provides that the parent of and substantial shareholders in a corporation are jointly and severally liable with the corporation for unpaid wages and penalties. Defines "substantial shareholder" as provided in Labor Code section 3717, as a shareholder who owns at least 15 percent of the total value of all classes of stock, or fifteen percent of the beneficial interests in the corporation.

6) Provides that a successor, as defined, to an employer who owes wages to his or her former employees is liable for those wages.

7) Provides that in cases where wages are paid with a check for which payment is refused due to insufficient funds, the imposition of up to 30 days' waiting time penalties applies to all employers, rather than employers only in the building and construction industry

LIS - 3

LEGISLATIVE INTENT SERVICE   (800) 666-1917

8) Clarifies that Labor Code Section 1194, which provides for an award of attorneys fees for an employee in cases involving failure to pay minimum wage and overtime wages, is separate from, and not controlled by Labor Code Section 218.5, which provides for prevailing party attorneys fees in other wage cases

9) Provides that the legal rate of interest on due and unpaid wages in a civil action for unpaid wages shall be established by Civil Code Section 3289(b), which is 10%.

10) Provides that an employer's itemized wage statement shall include, among other information, the number of piecework units earned and any applicable piece rate if paid on a piecework basis, and for non-exempt employees; the applicable hourly rates in effect during the pay period and the hourly rate of pay and hours worked. where applicable.

Clarifies that the employer shall keep specified payroll records for employees paid in cash and by check.

Provides, in the case of a knowing and intentional failure by an employer to comply with the itemized wage statement requirements, for an employee to recover a penalty of up to $100 per payroll period up to a maximum of $10,000. Provides that an employee may bring a complaint before the Commissioner or file a civil action for damages or penalties, and attorney's fees

11) Provides that in a case where an employer fails to maintain records that identify each employee to whom wages are paid, penalties shall be computed by multiplying the number of employees employed on the date the penalty for the preceding year, unless the employer affirmatively establishes evidence that supports a lesser penalty based upon proof of a lesser number of affected employees.

12) Provides for penalties for an employer who violates the requirement that no employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission (IWC). Provides for penalties of $50 per employee per pay period and payment of an amount equal to twice the average hourly rate of compensation for the employee for the full length of the meal or rest period. Provides that an employee may bring a complaint before the Commissioner or file a civil action or for damages or penalties, and attorney's fees.

13) Provides that the Commissioner may order an employer to post a bond if the employer fails to satisfy a final judgment for interest, penalties and other demands for compensation within the jurisdiction of the Commissioner, as well as unpaid wages. Provides that the bond shall cover such interest, penalties, or other demands, as well as unpaid wages.

14) Provides that the Commissioner shall, under specified circumstances, order the employer to post a workplace notice describing the nature of a violation and related information.

15) Provides that any amounts paid directly by a patron to a dancer employed by an employer subject to IWC Order No. 5 or 10 shall be deemed a gratuity.

LEGISLATIVE INTENT SERVICE   (800) 666-1917

AB 2509
Page 3

16) Prohibits an employer from deducting from a gratuity indicated by a patron on a credit card slip any credit card payment processing fee or cost. Requires payment of gratuities made by credit card to be made to the employees not later than the next regular payday following the date the patron authorized the credit card payment.

17) Provides that an employer shall maintain payroll records showing the number of piece-rate units earned by and any applicable piece rate paid to employees.

18) Provides that the civil penalty for an employer who willfully fails to maintain specified payroll records includes, in addition to records required by statute, records required by any applicable wage orders of the IWC. Revises the penalty for a violation of this section from $500 to $100 per employee for each payroll period up to a maximum period of three years.

19) Provides that the liquidated damages for a violation of minimum wage laws may be awarded in a hearing before the Commissioner in the same manner as a civil action under current law.

20) Provides that with respect to a claim for a failure to pay minimum wages, the Commissioner may, in the same proceeding, order both payment of wages owed, interest thereon, statutory liquidated damages and civil penalties.

EXISTING LAW:

1) Provides in a Berman hearing for documents to be obtained by subpoena served by personal service, but not a notice delivered by mail.

2) Establishes the rate of interest on unpaid wages a Berman hearing based on a statute which has been repealed.

3) Provides for the appeal to and a de novo review in court of the Commissioner's order, decision, or award following a Berman hearing.

4) Provides for an appeal to the Labor Department of a dismissal of an employee's complaint of unlawful discrimination.

5) Provides under Labor Code section 2717 for a civil action to hold substantial shareholders of a corporation without workers' compensation insurance liable for reimbursement of the Uninsured Employers Fund.

6) Provides under Labor Code section 2684 that in garment manufacturing, a business which is a successor to an employer who owes wages to the former employees is liable for those wages if the successor meets specified criteria.

7) Provides a penalty of up to 30 days' wages for an employer in the building and construction trades who intentionally pays wages with a check for which payment is refused due to insufficient funds.

LEGISLATIVE INTENT SERVICE   (800) 666-1917

79

A.B. 2509
Page 4

8) Provides for an employee to recover in a civil action for a failure to pay minimum wage or overtime compensation reasonable attorney's fees, and costs of suit.

9) Provides under Civil Code Section 3289(b) for recovery of interest at a rate of 10% in a civil action for a breach of contract, as specified.

10) Provides that when wages are paid, an employer shall issue an itemized wage statement including specified information including net and gross wages earned; total hours worked; the dates of the period covered; and all deductions.

Provides, in the case of a knowing and intentional failure by an employer to comply with the itemized wage statement requirements, an employee may recover a penalty of actual damages or $100, whichever is greater, plus costs and reasonable attorneys fees

11) Provides that an employer who violates the itemized wage statement requirements is subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation. Provides that the Commissioner shall take into consideration whether the violation was inadvertent, and may decide not to penalize an employer for a first violation when that violation was due to a clerical error or inadvertent mistake. .

12) Provides, under Wages Orders of the IWC for meal periods and rest periods. Provide under the Wage Orders for an "on duty" meal period when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.

13) Provides that the Commissioner may order an employer to post a bond to ensure future payment of wages in cases where the employer has failed to satisfy a final judgment for nonpayment of wages.

14) Provides for employers to post specified information including applicable wage orders of the IWC, information on safety and health, harassment and discrimination in employment, and rights under the Family and Medical Leave Act.

15) Defines "gratuity" to mean any tip, gratuity, money or part thereof, which has been paid or given to or left for an employee by a patron of a business over and above the actual amount due for services rendered or for goods, food, drink, or articles sold or served to the patron.

16) Provides that no employer shall collect, take or receive any gratuity or part thereof paid, given or left for an employee by a patron, or deduct any amount form wages due an employee on account of such gratuity. Provides that this prohibition does not apply under specified circumstances.

17) Requires an employer to keep payroll records containing specified information including the names, addresses and hours worked daily by employees.

18) Provides a civil penalty of $500 for an employer who fails to keep specified payroll records.

(800) 666-1917   LEGISLATIVE INTENT SERVICE

19) Provides that the liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon for a violation of minimum wage laws may be awarded in a civil action.

20) Provides for the Commissioner to issue a civil penalty citation of $50 for an initial violation of minimum wages and $250 for subsequent violations, and establishes a proceeding to contest such a penalty citation.

Provides for the Commissioner to order payment of minimum wages owed to an employee in a separate proceeding before the Commissioner under Labor Code section 98.

FISCAL EFFECT:  Unknown

COMMENTS:

1) Current statutes, regulations, and wage orders of the IWC establish requirements for the payment of wages including minimum wages and overtime, hours of work, and a framework of administrative and civil remedies for violations of wage and hour laws. This bill revises the administrative and civil procedures, remedies and record keeping requirements for the stated purpose of strengthening enforcement of existing wage and hour standards. It does not increase minimum wages or revise overtime requirements.

2) Revisions in the administrative procedures for wage claims before the Commissioner and appeals of the Commissioner's decision include:

   a) Allowing records to be obtained through a notice, rather than a subpoena. A subpoena, which is allowed under current law requires personal service. A notice may be mailed.

   b) Allowing the commissioner to combine two separate proceedings established under current law, one for payment of minimum wages owed, and another for civil penalties for failure to pay minimum wage, into a single proceeding.

   c) Providing that the Commissioner may award liquidated damages for a minimum wage violation instead of requiring the Commissioner or employee to file a civil suit to recover such damages. Under current law such damages may be recovered in a civil action by the Commissioner or the wage claimant, but not in an administrative hearing before the Commissioner.

   d) Establishing the rate of interest on unpaid wages at 10% in both administrative and civil court cases. Current law cites a repealed section and is confusing.

   e) Requiring an employer appealing a Commissioner's order following a hearing to post an undertaking and waiving the requirement for judicial arbitration in such cases. The judicial arbitration hearing may be viewed as redundant to the Berman hearing in these cases.

3) Revisions related to wage and payroll records include:

(800) 666-1917    LEGISLATIVE INTENT SERVICE

AB 2509
Page  6

    a)  Providing that itemized wage statements and central payroll records include piece rate and hourly pay rate information for piece rate and hourly workers.

    b)  Increasing the penalties for violation of itemized wage statement and central payroll records requirements

    c)  Shifting the burden of proof concerning the number of workers at an establishment where payroll records are missing

4)  Revisions related to penalties for violations of other wage and hour standards include:

    a)  Applying penalties for intentionally issuance of a bad (insufficient funds) payroll check applies to all employers rather than construction employers only  Under current law, the penalty is limited to construction employers.

    b)  Requiring an employer determined by the Commissioner to have engaged in a pattern and practice of wage law violations to post a workplace notice of findings and the Commissioner's telephone number to report further violations.

5)  Revisions for the purpose of clarifying existing law include:

    a)  Clarifying that an employee may bring a civil action for unlawful retaliation without exhausting administrative remedies, as specified, with the Commissioner.

    b)  Clarifying that Labor Code Section 1194, which provides for an award of attorneys fees for an employee in cases involving failure to pay minimum wage and overtime wages, is separate from, and not controlled by Labor Code Section 218.5, which provides for prevailing party attorneys fees in other wage cases

6)  This bill also provides for unpaid wages to be collected from substantial shareholders and successor entities under specified circumstances.  The substantial shareholders provision is based on substantial shareholder liability for corporations which lack workers' compensation insurance.  The successor entity provision is based on the existing provision related to successor liability for unpaid wages in the garment manufacturing industry.

7)  Last year the supporters sponsored similar legislation in AB 633 and AB 1652, which passed and were vetoed  This bill does not contain a number of controversial provisions proposed in last year's legislation.  For example, it does not establish a private right of action to recover and share in a portion of the state's civil penalties for wage violations, and for minimum wage and overtime violations.  It does not carry forward a proposal to establish liquidated damages for overtime violations.  It does not prescribe the Commissioner's required efforts to collect wage judgements.

8)  Supporters state that California has a large and growing "underground economy" of employers who are chronic violators of wage and hour, safety, and tax laws  Such employers pay cash under the table or with checks that bounce, fail to report and pay employment taxes,

LEGISLATIVE INTENT SERVICE    (800) 666-1917

82

work their employees long hours without rest breaks, and avoid paying wage judgments issued against them. They cheat workers out of billions of dollars in wages owed to them under minimum wage and overtime laws. California's underground economy supplants an estimated $60 billion in legal business transactions. According to executive orders concerning the expanding underground economy issued by Governor's Deukmejian and Wilson, the state's loss of income taxes alone increased from $2 billion in 1986 to $3 billion in 1993.

They state that this bill streamlines the Commissioner process by allowing document requests by mail; by allowing the commissioner to re open a discrimination case on remand from the Department of Labor; and providing for a "one-stop" civil penalty system where both wages and penalties can be recovered at one time; ensures that workers are provided adequate record keeping information, ensures that employers cannot easily escape wage liability, and that this bill clarifies areas of the law

9) Opponents state that they have serious concerns regarding nearly all of the twenty-nine changes proposed by this bill and their impact on California's employers who even inadvertently violate a wage and hour law. These include: authorizing the Commissioner to create new, different rules of evidence and subpoenas process for wage and hour claims; eliminating judicial discretion to require non-binding arbitration on appeals; reopening of previously dismissed claims when letters criticizing a state program are filed with the U.S. Department of Labor; establishment of joint, and several liabilities for substantial shareholders, parent corporations and successors for unpaid wages and penalties; mandated private taxpayer payment of civil servant attorneys; wage and hour claims permitted in civil court prior to exhaustion of administrative remedies; new commissioner authority to assess civil damages, including liquidated damages; and new mandated payment of restitution plus civil penalties for failure to pay minimum wage consisting of all underpaid wages, any interest owed and statutory liquidated damages.

REGISTERED SUPPORT / OPPOSITION:

Support

American Federation of State, County and Municipal Employees
California Conference Board of the Amalgamated Transit Union
California Conference of Machinists
California Labor Federation, AFL-CIO
Employment Law Center, Legal Aid Society of San Francisco
Engineers and Scientists of California
Exotic Dancers Alliance
Hotel Employees, Restaurant Employees International Union
Mexican American Legal Defense and Educational Fund
Region 8 States Council of the United Food & Commercial Workers
Service Employees International Union
Transport Workers Union of America

LEGISLATIVE INTENT SERVICE   (800) 666-1917

83

AB 2509
Page 8

Opposition

Associated General Contractors
California Chamber of Commerce
California Manufacturers and Technology Association
California Retailers Association
Civil Justice Association of California
Western Growers Association

Analysis Prepared by:   Ralph Lightstone / L. & E. / (916)319-2091

LEGISLATIVE INTENT SERVICE    (800) 666-1917

**Exhibit C**

Date of Hearing:  May 10, 2000

ASSEMBLY COMMITTEE ON APPROPRIATIONS
Carole Migden, Chairwoman

AB 2509 (Steinberg) – As Amended: February 24, 2000

Policy Committee: Labor and Employment                    Vote:  6-3

Urgency:  No      State Mandated Local Program:No          Reimbursable:

SUMMARY:

This bill revises statutes relating to the administrative and civil enforcement of wage and hour laws.  Specifically, this bill:

1) Provides that the parent of, and substantial shareholders in, a corporation are jointly and severally liable with the corporation for unpaid wages and penalties.

2) Provides that a successor employer, as defined, to an employer who owes wages to his or her former employees is liable for those wages

3) Provides that penalties for the payment of wages with a check that is refused due to insufficient funds apply to all employers, not just employers in the building and construction industry.

4) Establishes penalties for an employer who violates the prohibition against requiring an employee to work during a meal or rest period mandated by a wage order of the Industrial Welfare Commission (IWC)   Provides that an employee may bring a complaint before the Labor Commissioner or file a civil action or for damages or penalties and attorney's fees

5) Provides that the Labor Commissioner may order an employer to post a bond if the employer fails to satisfy a final judgment for interest, penalties and other demands for compensation within the jurisdiction of the Commissioner, as well as unpaid wages

6) Makes other clarifying and technical changes to law.

FISCAL EFFECT:

Minor, absorbable costs to the Department of Industrial Relations (DIR).

COMMENTS:

1) Background.  Current statutes, regulations, and wage orders of the IWC establish requirements for the payment of wages, including minimum wages and overtime, hours of work, and a framework of administrative and civil remedies for violations of wage and hour laws.  This bill revises the administrative and civil procedures, remedies and record keeping requirements for the purpose of strengthening enforcement of existing wage and hour standards   It does not increase minimum wages or revise overtime requirements.

LIS - 6

LEGISLATIVE INTENT SERVICE   (800) 666-1917

AB 2509
Page 2

2) <u>Purpose.</u> This bill is the product of hearings conducted last year by the Labor Committee on California's underground economy, which uncovered widespread violations of labor, safety and tax laws. The bill strengthens and streamlines California's wage and hour laws

3) <u>Prior Legislation.</u> Last year the governor vetoed similar legislation in AB 633 and AB 1652, by the same author. AB 2509 does not contain a number of controversial provisions proposed in last year's legislation. For example, it does not establish a private right of action to recover and share in a portion of the state's civil penalties for wage and overtime violations

<u>Analysis Prepared by:</u>   Stephen Shea / APPR. / (916) 319-2081

LEGISLATIVE INTENT SERVICE     (800) 666-1917

86

**Exhibit D**

SENATE JUDICIARY COMMITTEE
Adam B. Schiff, Chairman
1999-2000 Regular Session

AB 2509
Assembly Member Steinberg
Amended August 7, 2000
Hearing Date: August 8, 2000
Labor Code
DLM:pjs

A
B

2
5
0
9

## SUBJECT

Wage and Hour Law: Remedies and Procedures

## DESCRIPTION

This bill proposes to make various changes to the Labor Code relative to rights, remedies, and procedures  Specifically, this bill would provide that:

- In an administrative wage claim proceeding (Berman hearing) before the Commissioner, a notice for production of documents, which is served by mail, may be used in lieu of subpoena, which requires personal service.

- The legal rate of interest on due and unpaid wages at a Berman hearing shall be at the rate established by Civil Code Section 3289(b), which is 10%.

- Following a Berman hearing, an employer filing an appeal with the court shall post an undertaking in the amount of the Commissioner's final order, decision or award.

- The requirement of arbitration of civil court cases does not apply in an appeal of an administrative hearing decision.

- In cases where the Commissioner represents the wage claimant in a judicial appeal of an administrative decision, the Commissioner may be awarded attorney's fees in the same manner as private counsel representing a wage claimant.

- If the United States Department of Labor (Labor Department) determines that the Commissioner has erred in dismissing the complaint of an employee of unlawful retaliation, the Commissioner shall, within 15 days after receipt of the Labor Department's determination, either notify the parties of the

(more)

LIS - 11



LEGISLATIVE INTENT SERVICE   (800) 666-1917

AB 2509 (Steinberg)
Page 2

ongoing investigation of the employees complaint. or shall issue a new
determination in the matter.

In addition. AB 2509 would:

- Clarify that an employee may file a civil action for unlawful retaliation.
  without first filing a discrimination claim before the Commissioner

- Declare that when a plaintiff opts to bypass the administrative process and
  sue in court, the existing civil statute of limitations period would apply.
  rather that the limitations period for filing with the Labor Commission (six
  months from date of violation.)

- Clarify that Labor Code Section 1194, which provides for an award of
  attorney's fees *for an employee* in cases involving failure to pay minimum
  wage and overtime wages. is separate from, and not controlled by Labor
  Code Section 218.5, which provides for *prevailing party attorney's fees* in other
  wage cases. (Emphasis added.)

- Provide that the legal rate of interest on due and unpaid wages in a civil
  action for unpaid wages shall be established by Civil Code Section 3289(b),
  which is 10%.

- Provide, in the case of a knowing and intentional failure by an employer to
  comply with the itemized wage statement requirements, for an employee to
  recover a penalty of up to $100 per payroll period up to a maximum of
  $10,000. The bill would further provide that an employee may bring a
  complaint before the Commissioner or file a civil action for damages or
  penalties, and attorney s fees for this type of violation.

- Provide for penalties of fifty dollars ($50) per employee per pay period and
  payment of an amount equal to twice the average hourly rate of
  compensation for the employee for the full length of the meal or rest period.
  Provides that an employee may bring a complaint before the Commissioner
  or file a civil action or for damages or penalties, and attorney's fees for
  violation of this provision.

- Existing law authorizes the Commissioner to order an employer to post a
  bond in the amount of unpaid wages, if the employer fails to satisfy a final
  judgment for interest, penalties and other demands for compensation within
  the jurisdiction of the Commissioner. This bill would provide that the bond
  shall cover such interest, penalties, or other demands as well as unpaid
  wages.

LEGISLATIVE INTENT SERVICE   (800) 666-1917

AB 2509 (Steinberg)
Page 3

- Provide that the liquidated damages for a violation of minimum wage laws may be awarded in a hearing before the Commissioner in the same manner as a civil action under current law.

- Provide that, with respect to a claim for a failure to pay minimum wages, the Commissioner may, in the same proceeding, order both payment of wages owed, interest thereon, statutory liquidated damages and civil penalties.

## BACKGROUND

Existing law provides a framework for the enforcement of laws relating to the payment wages and overtime compensation, and working conditions by the Labor Commissioner, chief of the Division of Labor Standards Enforcement (DLSE) in the State Department of Industrial Relations (DIR).

Despite the efforts of DIR, California has a large and growing "underground economy" of employers who are chronic violators of wage and hour, safety, and tax laws. Such employers pay cash under the table or with checks that bounce, fail to report and pay employment taxes, work their employees long hours without rest breaks, and avoid paying wage judgments issued against them. In so doing, according to executive orders issued by Governor's Deukmejian and Wilson, it is estimated that the state's loss of income taxes alone increased from $2 billion in 1986 to $3 billion in 1993.

AB 2509 was previously approved by Senate IR on a 4-1 vote. It was double-referred to Judiciary Committee for review of the civil enforcement and procedure provisions.

## CHANGES TO EXISTING LAW

1. Existing law provides the Labor Commissioner, his or her deputies, and agents to issue subpoenas for the purpose of carrying out the laws which the Division of Labor Standards Enforcement is responsible for enforcing.

   This bill would provide that in an administrative wage claim proceeding before the Commissioner, (Berman hearing) a notice for production of documents, which is served by mail in compliance with Code of Civil Procedure Section 1013, may be used in lieu of a subpoena. The notice would have the same force and effect as a subpoena.

2. Existing law provides that interest on all due and unpaid wages shall accrue at the rate established in Section 19269 of the Revenue and Taxation Code. This section of law has been repealed.

   This bill would provide that the legal rate of interest on due and unpaid

(800) 666-1917   LEGISLATIVE INTENT SERVICE

AB 2509 (Steinberg)
Page 4

wages shall be at the statutory rate established by Civil Code Section 3289(b), which is 10%.

3. <u>Existing law</u> provides that any order, decision, or award made by the Labor Commissioner in a Berman administrative hearing may be appealed to the municipal or superior court.

<u>This bill</u> would exempt those appeal proceedings from the requirement of mandatory arbitration

4. <u>Existing law</u> provides that the court may award costs and attorney's fees to the prevailing parties in an unsuccessful appeal.

<u>This bill</u> would provide that the award of costs and attorney's fees applies, regardless of whether the successful party is represented by his or her own attorney or by the Labor Commissioner.

5. <u>Existing law</u> does not require an appellant to post a bond as a condition of filing an appeal from an adverse Berman hearing decision.

<u>This bill</u> would require employers filing an appeal of the Commissioner in a Berman hearing to post a prescribed undertaking and would provide for disposition thereof

6. <u>Existing law</u> provides that any person may file a complaint for unlawful discharge or unlawful discrimination with the Labor Commissioner, who is empowered to provide prescribed relief if the complaint is found meritorious

If the Labor Commissioner dismisses such a complaint, the Labor Commissioner is required to notify the complainant of the right to bring a court action or to file a complaint against the state program with the United States Department of Labor.

<u>This bill</u> would specify that if a timely complaint is filed against the state program with the United States Department of Labor, the Labor Commissioner's decision dismissing the complaint is vacated pending issuance of findings by the United States Department of Labor

<u>The bill</u> would require the Labor Commissioner, within 15 days of receiving those findings, either to notify the parties of the reopening of the investigation or to issue a new determination of the complaint

7. <u>Existing law</u> provides that any wage claimant may sue directly or through an assignee for any wages or penalty due him under this article.

LEGISLATIVE INTENT SERVICE    (800) 666-1917

90

A.B 2509 (Steinberg)
Page 5

This bill would expressly provide that an employee may file a civil judicial action without exhausting any administrative remedy under the jurisdiction of the Labor Commissioner. and may in such a civil action seek any relief that would be available from the Labor Commissioner. The bill would make the six month limitation period for filing a complaint with the Labor Commissioner inapplicable to such a civil action.

B   Existing law provides that an employer in the building and construction industry is liable for a penalty of up to 30 days' wages and fringe benefits to any employee paid by a check, draft, or voucher that is drawn on a nonexistent account or that is dishonored for insufficient funds if the instrument is presented for payment within 30 days of receipt. This penalty does not apply if the employer can establish that the violation was unintentional.

This bill would make this penalty applicable to all employers, and would make related conforming and technical, nonsubstantive changes.

9.   Existing law provides that employers are required to provide employees semimonthly, with payment of wages, an itemized statement listing gross wages, total hours worked of employees paid by the hour, specified deductions, net wages, and certain other information. Violation of these requirements is a misdemeanor.

This bill would provide that total hours need not be disclosed for salaried employees exempt from payment of overtime compensation.

The bill would require disclosure of the number of piece-rate units and the applicable piece rate for employees paid on that basis, and would require disclosure of all applicable hourly rates and the number of hours worked by the employee at each rate.

10. Existing law provides an employee suffering injury as a result of the employer's knowing or intentional failure to comply with the above disclosure requirement is entitled to recover the greater of actual damages or one hundred dollars ($100), plus costs and reasonable attorney's fees

This bill would revise the liability of employers for knowing or intentional noncompliance with this disclosure requirement to entitle an aggrieved employee to recover the greater of actual damages or penal damages of $100 for each pay period in which the violation occurs up to $10,000, plus costs and reasonable attorney's fees.

(800) 666-1917   LEGISLATIVE INTENT SERVICE

AB 2509 (Steinberg)
Page 6

The bill would authorize an aggrieved employee to seek recovery in administrative proceedings before the Labor Commissioner or in a civil action.

11. Existing law provides that any employer that violates subdivision (a) of Section 226 shall be subject to:

- A civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation, and;

- One thousand dollars ($1,000) per employee for each violation in a subsequent citation.

This bill would provide that any employer that violates subdivision (a) of Section 226 shall be subject to:

- A civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation, and;

- One thousand dollars ($1,000) per employee for each violation in a subsequent citation.

In the event that an employer fails to maintain records that identify each employee to whom wages are paid, the penalties under this section shall be computed by multiplying the number of employees employed on the date the penalty is assessed by the 24 semimonthly pay periods of the immediately preceding 12 months. However, the bill would allow the employer to affirmatively establish that the evidence supports a lesser penalty based upon proof of a lesser number of affected employees.

The civil penalties provided for in this section would be in addition to any other penalty provided by law

The bill would provide that in enforcing this section, the Labor Commissioner shall take into consideration whether the violation was inadvertent and, in his or her discretion, may decide not to penalize an employer for a first violation when that violation was due to a clerical error or inadvertent mistake.

12. Existing law authorizes the Industrial Welfare Commission to adopt orders respecting wages, hours, and working conditions. Under this authority, IWC Wage Orders require meal and rest periods.

This bill would make any employer that requires any employee to work during a meal or rest period mandated by an order of the commission subject to a civil penalty of $50 per violation and liable

LEGISLATIVE INTENT SERVICE    (800) 666-1917

92

AB 2509 (Steinberg)
Page 7

to the employee for twice the employee's average hourly or piecework pay

An aggrieved employee could bring an administrative or civil action for recovery of these amounts. and if the employee prevailed in a civil action, the employee would be entitled to recover their attorney's fees

In addition. this bill would provide that if an employer fails to provide and maintain necessary tools or equipment in violation of an applicable wage order of the Industrial Welfare Commission and an employee purchases the tools or equipment in order to perform his or her work, the employer shall either purchase the tools or equipment from the employee in an amount equal to the price paid by the employee or pay sufficient wages to the employee as stated in the wage order for a period of six months to qualify for an exemption to the wage order

13. Existing law authorizes the Labor Commissioner to require an employer to deposit a bond if the employer is convicted of violating specified provisions respecting paying employees or if a judgment for unpaid wages against the employer remains unsatisfied for ten days after expiration of the appeal period with no appeal on file. The bond is conditioned on the employer paying employees for up to six months in compliance with specified laws and payment of any judgment for unpaid wages.

This bill would revise these provisions to make the authorization for a bond requirement applicable to unpaid judgments for interest, penalties, or other demands for compensation within the jurisdiction of the Labor Commissioner, in addition to judgments for unpaid wages. The bond would remain conditioned on payment of such an unsatisfied judgment.

14. Existing law provides that an aggrieved employee, or the Department of Industrial Relations or its Division of Labor Standards Enforcement, may bring a civil action to recover unpaid minimum wages. In these actions the employee is entitled to additional liquidated damages equal to the unpaid wages and interest thereon.

This bill would allow the Labor Commissioner to award liquidated damages, as the court may in a civil action.

15. Existing law provides for the Commissioner to issue a civil penalty citation of fifty dollars ($50) for an initial violation of failure to pay minimum wages and two hundred and fifty dollars ($250) for subsequent violations.

LEGISLATIVE INTENT SERVICE   (800) 666-1917

AB 2509 (Steinberg)
Page 8

Existing law also provides for the Commissioner to order payment of minimum wages owed to an employee in a separate proceeding before the Labor Commissioner

This bill would allow that with respect to failure to pay minimum wages, the Commissioner may. in the same proceeding, order both payment of wages owed, interest, statutory liquidated damages, and civil penalties.

This bill would also add restitution in an amount sufficient to recover all underpaid wages and interest thereon, as an element of damages

COMMENT

1   Stated need for legislation and support

According to the California Teamsters Public Affairs Council, " For too long. California has experienced a downward spiral of labor law enforcement. Unfortunately, this lax enforcement has sent the message to unscrupulous employers that it is permissible to take advantage of vulnerable employees. AB 2509 addresses these problems by restoring the ability of California's workers to receive the wages they worked so hard to earn."

AB 2509 is sponsored by the California Labor Federation, who offers the following in support: "AB 2509 will streamline the labor commissioner process. Under AB 2509 the labor commissioner would be assured of receiving attorney fees when a worker files a complaint with the labor commissioner, wins and the commissioner then represents the worker in a 'de novo' review when the employer appeals to the court  AB 2509 would also allow the labor commissioner to request documents via mail; provide the labor commissioner an efficient means of calculating penalties for failure to provide itemized wage statements; allow the labor commissioner to re-open a discrimination case on remand from the US department of Labor; provide for a "one-stop" civil penalty system where both wages and penalties can be recovered at one time; and permit the labor commissioner to order an employer who has failed to satisfy a judgment for unpaid interest and penalties to post a bond. (Currently, the labor commissioner can require the employer to post a bond for unpaid wages.)"

Finally, they assert, "AB 2509 ensures that workers are provided adequate record keeping information. Workers are often provided little information about their wages. This bill will remedy that problem  Under AB 2509 workers will be told about their hourly rate for all hours worked. Stiffer penalties will also be imposed for failing to provide workers information about their wages. According to the Wilson Administration. California loses

LEGISLATIVE INTENT SERVICE   (800) 666-1917

94

AB 2509 (Steinberg)
Page 9

approximately 3 billion dollars a year in much needed taxes when employers
pay workers subminimum wages and cash under the table."

The Golden Gate University School of Law, Women's Employment Rights
Clinic, adds that the bond requirement of this bill is needed, based upon their
experience that, "(O)nce a person receives a judgment in his or her favor
through the labor commissioner process. we find that it is not uncommon for
an employee to encounter extreme difficulty recovering the unpaid wages
from the employer  In addition, employees often have to wait unnecessary
lengths of time for a judgment to be satisfied when an employer files a *de novo*
court appeal. AB 2509 remedies this problem by requiring employers to post
bonds, not only for unpaid wages, but also for interest _and_ penalties, as well
as requiring any employer who appeals to the superior court to post a bond.
AB 2509 also includes a critical provision that imposes penalties for bounced
paychecks "

California Rural Legal Assistance Foundation states that, "(A)lthough the
federal Migrant and Seasonal Agricultural Worker Protection Act has
required since 1983 that farm labor contractors, agricultural growers and
agricultural associations provide piece rate pay stub information to workers,
and keep such records for three years, there is no comparable state law
provision." They add that, in addition to pay stub violations, a recent CRLAF
survey found that farm workers were forced to labor during either meal or
break periods. "We believe this practice is also widespread, and contributes
to increased job place injuries. Although the practice is prohibited under
California's wage orders, there are no effective penalties for violations.
AB 2509 remedies that, and in addition provides the types of private
enforcement tools that will help insure future compliance."

2  Opposition

Most of the opposition letters received by this Committee reflected concern
with the entire package of proposals contained in AB 2509. However, some
of the bill's provisions caused particular concern. The California Chamber of
Commerce letter is typical of those the Committee received, in saying:
"California Chamber members have serious concerns regarding nearly all of
the twenty-nine changes proposed by AB 2509 and their impact on
California's employers who even inadvertently violate a wage and hour law.
AB 2509 contains many issues of deep concern to businesses throughout
California, some of which are:

- Authorizing the labor commissioner to create new, different rules of
  evidence and subpoena process for wage and hour claims;
- Eliminating judicial discretion to require non-binding arbitration on
  appeals;

LEGISLATIVE INTENT SERVICE   (800) 666-1917

95

AB 2509 (Steinberg)
Page 10

- Reopening of previously dismissed claims when letters criticizing a state program is filed with the U.S. department of Labor
- Mandated private taxpayer payment of civil servant attorneys;
- Wage and hour claims permitted in civil court prior to exhaustion of administrative remedies;
- New state labor commissioner authority to assess civil damages. including liquidated damages;
- New mandated payment of 'restitution' plus civil penalties for failure to pay minimum wage consisting of all under paid wages, any interest owed and statutory liquidated damages."

The Associated General Contractors and Associated General Contractors San Diego add that, "AB 2509 contains provisions similar to AB 1652 (Steinberg) which was vetoed by Governor Davis last year mainly because the provisions were 'excessive' and 'overly broad.' This legislation goes far beyond last year's bill and we fail to understand the justification for it. The Division of Labor Standards Enforcement has received additional funding and augmentations to its staffing in order to allow the Labor Commissioner's office to fulfill its enforcement duties. Now that the Division is fully staffed, it seems reasonable to allow them an opportunity to do their job before increasing penalties and creating new violations."

The California Employment Law Council opposes the bill based, in part, upon the deletion of mandatory arbitration in de novo review of commission decisions, saying, "this legislation would create an exception for appeals from Labor Commissioner orders. This is senseless. Arbitration generally serves a useful purpose because it leads to the resolution of disputes efficiently and quickly, without significant costs, and here a quick resolution by an independent decision maker is even more desirable."

3. Recent amendments delete controversial shareholder and successor liability provisions

As originally drafted AB 2509 would have provided that the parent of and substantial shareholders in a corporation would be jointly and severally liable with the corporation for unpaid wages and penalties. The bill also would have extended liability to expressly cover a successor to an employer who owes wages to his or her former employees, for those wages. These two provisions drew heated opposition from many quarters. As a result of the concerns expressed, and in an attempt to moderate the bill, the author agreed to remove these provisions.

(800) 666-1917   LEGISLATIVE INTENT SERVICE

96

AB 2509 (Steinberg)
Page 11

**e. Major remaining provisions in Committee's jurisdiction**

**a) Notice in lieu of subpoena**

Currently the Commissioner may compel attendance of witnesses and the production of documents through service of a subpoena, which is enforced by the courts. AB 2509 would provide that in an administrative wage claim proceeding before the Commissioner, a notice to compel attendance may also be used in lieu of subpoena.

Generally, under the California Code of Civil Procedure, the process by which the attendance of a witness is required is the subpoena. It is a writ or order directed to a person and requiring the person's attendance at a particular time and place to testify as a witness. It may also require a witness to bring any books, documents, or other things under the witness's control which the witness is bound by law to produce in evidence. Service of a subpoena is made by delivering a copy to the witness personally.

In the case of the production of a party, personal service is not required if written notice requesting the presence of a party is served upon the attorney of that party or person. The giving of the notice to the attorney has the same effect as service of a subpoena on the witness. The service upon an attorney may be made at the attorney's office, the attorney's residence, or mail.

Proof of service by mail may be made by affidavit of a person over the age of 18 years, or certificate signed by a member of the State Bar of California, setting forth the exact title of the document served and filed in the cause, showing the name and residence or business address of the person making the service, attesting that the person is not a party to the cause, and showing the date and place of deposit in the mail, the name and address of the person served as shown on the envelope, and also showing that the envelope was sealed and deposited in the mail with the postage thereon fully prepaid.

AB 2509 would extend this procedure to apply to production of witnesses as well as parties to an administrative action. According to the legal treatise, *California Civil Procedure Before Trial*, "In most instances it is sound to attempt service initially by mail and acknowledgment of receipt because the approach saves costs if the defendant cooperates... The approach should not be used, however, when prompt service is essential or when the person to be served is unaware of the filing of the action and likely to make service difficult after being informed of the action by

LEGISLATIVE INTENT SERVICE   (800) 666-1917

97

AB 2509 (Steinberg)
Page 12

receipt of the notice form." *California Civil Procedure Before Trial 3d ed.* CEB (1998) Section 26.33.

Here, the concerns over timeliness should be met by the requirements contained in Section 1013 of the Code of Civil Procedure which AB 2509 references. That section provides that "service is complete at the time of the deposit, but any period of notice and any right or duty to do any act or make any response within any period or on a date certain after the service of the document, which time period or date is prescribed by statute or rule of court, shall be extended five days, upon service by mail, if the place of address is within the State of California, 10 days if the place of address is outside the State of California but within the United States, and 20 days if the place of address is outside the United States." In addition, the CCP provides for service by "Express Mail" which would allow one day delivery of the notice to appear.

b) Deletion of requirement for judicial arbitration in de novo reviews of Berman hearing decisions

Under existing law, cases of under $50,000 which are brought before superior courts with counties with 10 or more judges must go through mandatory arbitration prior to trial. This bill would do away with this requirement in cases which have already been adjudicated at the administrative level, and are presented, to the court as an appeal. This is consistent with other provisions of law.

For instance, actions that include a prayer for equitable relief need not be submitted to judicial arbitration. (CCP 1141.13). Under this provision, judicial actions under the Fair Employment and Housing Act are not subjected to mandatory judicial arbitration. In addition, other exceptions exist, including and actions found by the court to be "not amenable to arbitration on the ground that arbitration would not reduce the probable time and expense necessary to resolve the litigation." (California Rule of Court 1600. [J]) Here, the bill would only negate the requirement for arbitration in cases which appear before the trial court on appeal. These cases have already been adjudicated at the administrative level, therefore it is unlikely that subjecting the parties to yet another process prior to trial will "reduce the probable time and expense necessary to resolve the litigation."

c) No administrative exhaustion requirement before bringing suit in court

Existing law, Labor Code Section 216 provides that "Nothing in this article shall limit the authority of the district attorney of any county or prosecuting attorney of any city to prosecute actions, either civil or

LEGISLATIVE INTENT SERVICE   (800) 666-1917

AB 2509 (Steinberg)
Page 13

criminal, for violations of this article or to enforce the provisions thereof independently and without specific direction of the division. Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article."

AB 2509 would clarify that this language intends that claimants in wage claim cases need not exhaust administrative remedies with the Commissioner prior to resorting to court. To date, there is no court interpretation of this language in relation to wage and hour claims which are the subject of AB 2509

d) Penalties

AB 2509 proposes to raise penalties for numerous violations of the Labor Code. While not all penalties fall within this Committee's jurisdiction, a complete listing of all the changes are provided for informational purposes. These include:

| Labor Code Sec. | Current Law | AB 2509 |
|---|---|---|
| 203.1 Bounced Checks | 30 day waiting time penalty applies to construction industry | Apply 30 day penalty to all employers |
| 226 Itemized wage statements | For knowing and intentional violation an employee may recover actual damages or $100, whichever is greater | For knowing and intentional violation, employee may recover actual damages or $100 per pay period, whichever is greater, up to a max aggregate penalty of $10,000. |
| 226.3 Itemized wage statements | Civil penalties | Penalty remains same. Creates rebuttable presumption on number of employees where no records exist. Uses formula, number of current employees x 24 semimonthly payperiods. |
| 226.7 Meal & | No penalty | $50 civil penalty plus |

(800) 666-1917   LEGISLATIVE INTENT SERVICE

A.B 2509 (Steinberg)
Page 14

| | | twice hourly wages for length of meal or break period. |
|---|---|---|
| 226.8 Tools | Purchase tools | Purchase tools or back pay |
| 245 Posted notice | No posting requirement | Pattern and practice violators must post notice stating violation, etc. |
| 1174.5 Payroll records | Willful failure to maintain records $500. | Willful failure to maintain records $100 per employee For each payroll period up to three years maximum. |

breaktime

Of these, the two most controversial are the increase in the civil penalty for failure to itemize wage statements and central payroll records. It should be noted that some of these issues are within the Senate IR Committee's jurisdiction. As detailed above, penalties for violation of these areas would be dramatically increased. The author makes a convincing argument for the need of the Commissioner and employees to have access to this information, given that most penalty provisions in the Labor Code are based upon the wages lost by either the individual employee or the employer's entire labor force.

By way of comparison, if one looks at the penalties available under The Fair Employment and Housing Act, one finds substantial penalties for violation. As the administrative procedures under the Labor Code and FEHA are quite similar, it may be instructive to look to the FEHA when considering wage claim violations (See *Leibert v. Transworld Systems* (1995) 32 Cal. App. 4th 1693.)

Under the Fair Employment and Housing Act, the Commission may award actual damages as may be available in civil actions. However actual damages shall not exceed, in combination with the amounts of any administrative fines one hundred fifty thousand dollars ($150,000) per aggrieved person per respondent. Here, the proposed raise in damages for knowing and intentional failure to comply with wage statement requirements would be capped at an aggregate amount of ten thousand dollars ($10,000). While this is a dramatic increase from the current cap of one hundred dollars ($100), it is less than the aggregate cap under FEHA.

As well, the damages provided under AB 2509 for willful failure to maintain payroll records is increased from a flat five hundred dollars ($500) to one hundred dollars ($100) per employee for each payroll period

LEGISLATIVE INTENT SERVICE   (800) 666-1917

100

AB 2509 (Steinberg)
Page 15

during which the violation occurs, reaching back a maximum of three years. Under FEHA, willful failure to maintain employment records subjects the violator to a misdemeanor. punishable by up to six months in jail and a fine of up to one thousand dollars ($1000).

e) <u>Authorizing Commissioner to assess penalties consistent with courts</u>

Currently, a court may assess any penalty for violation available in statute in its decision. However, in the administrative realm, the Commissioner must conduct two different hearings, one to determine whether a violation occurred, and another to assess damages, fines and penalties. This bill would allow the Commissioner to award damages, fines and penalties consistent with the court's authority.

This authority is generally consistent with the authority granted to the Fair Employment and Housing Commission for violations of employment provisions of the Fair Employment and Housing Act. Under the FEHA, if "the commission finds that a respondent has engaged in any unlawful practice under this part, it shall state its findings of fact and determination and shall issue and cause to be served on the parties an order requiring the respondent to cease and desist from the unlawful practice and to take action, including, but not limited to, any of the following:

- The hiring, reinstatement, or upgrading of employees, with or without backpay.

- The admission or restoration to membership in any respondent labor organization.

- The payment of actual damages as may be available in civil actions, however actual damages shall not exceed, in combination with the amounts of any administrative fines one hundred fifty thousand dollars ($150,000) per aggrieved person per respondent.

In addition to the foregoing, in order to vindicate the purposes and policies of the FEHA, the Fair Employment and Housing Commission may also:

- Assess an administrative fine per aggrieved person per respondent.

- Assess a civil penalty of up to twenty-five thousand dollars ($25,000) to be awarded to a person denied any right provided for by Section 51.7 of the Civil Code, (Hate Crimes) as an unlawful practice under this part.

LEGISLATIVE INTENT SERVICE   (800) 666-1917

101

AB 2509 (Steinberg)
Page 16

4  Prior related legislation and veto message

AB 633 (Steinberg), Ch. 554, Stats of 1999, initially began as a broad ranging
wage and hour bill, similar to AB 2509. It was narrowed to address only
wage and hour issues within the garment industry

AB 1652 (Steinberg) of last year contained many of the provisions being
proposed in AB 2509. As presented to the Governor, AB 1652 would have:

- Required the Commissioner, when acting on behalf of a judgment
  creditor, to make reasonable collection efforts, unless the judgment
  creditor requests in writing that the Commissioner take no action.

- Provided that an employer seeking judicial review of an adverse order,
  decision, or award by the Commissioner shall post an undertaking in the
  amount of the order, decision, or award.

- Applied a provision of current law that imposes up to 30 days waiting
  time penalties where wages (or fringe benefits) are paid with a check for
  which payment is refused due to insufficient funds to all employers. This
  requirement currently applies only to the building and construction
  industry.

- Required an employer to provide information concerning the number of
  piecework units earned and the applicable piece rate if the employee is
  paid on a piecework basis.

- Prohibited employers from requiring any employee to work during any
  meal or rest period, and would have provided for penalties for violation
  of this section.

- Provided that an employer who knowingly and intentionally fails to
  maintain specified payroll records shall be subject to fines of $50 for the
  initial pay period violation and $100 per employee per each subsequent
  payroll period in which the records are not maintained, up to a maximum
  of $5,000.

- Required an employer to post a workplace notice describing the nature of
  a violation and related information.

The Governor vetoed that measure, stating in relevant part

"This legislation, while laudable in its intent, duplicates many existing
enforcement efforts and contains excessive penalties. Existing law already
provides penalties against employers who issue bad checks for payment of

LEGISLATIVE INTENT SERVICE    (800) 666-1917

102

A.B 2509 (Steinberg)
Page 17

wages   Additionally, requiring employers who engage in a pattern of
violating wage and hour laws to post a declaration that there will be no
further violations is unworkable and meaningless. This legislation as
drafted, is overly broad."

5   <u>Additional provisions beyond Judiciary jurisdiction</u>

Provide that in cases where wages are paid with a check for which payment is
refused due to insufficient funds, the imposition of a penalty payment of up
to 30 days' of wages applies to all employers. Currently this applies only in
the building and construction industry.

Require that an employer's itemized wage statement shall include, among
other information, the number of piecework units earned and any applicable
piece rate if paid on a piecework basis, and for non-exempt employees, the
applicable hourly rates in effect during the pay period and the hourly rate of
pay and hours worked, where applicable.

Clarify that the employer shall keep specified payroll records for employees
paid in cash and by check.

Provide that in a case where an employer fails to maintain records that
identify each employee to whom wages are paid, penalties shall be computed
by multiplying the number of employees employed on the date of the penalty
for the preceding year, unless the employer affirmatively establishes evidence
that supports a lesser penalty based upon proof of a lesser number of affected
employees.

Provide that no employer shall require any employee to work during any
meal or rest period mandated by an applicable order of the Industrial Welfare
Commission (IWC).

Provide that the Commissioner shall order the employer found in violation to
post a workplace notice describing the nature of a violation and related
information (described in detail below).

Provide that any amounts paid directly by a patron to a dancer employed by
an employer subject to IWC Order No  5 or 10 shall be deemed a gratuity.

Prohibit an employer from deducting from a gratuity indicated by a patron
on a credit card slip any credit card payment processing fee or cost. The bill
also would require payment of gratuities made by credit card to be made to
the employees not later than the next regular payday following the date the
patron authorized the credit card payment.

LEGISLATIVE INTENT SERVICE   (800) 666-1917

103

AB 2509 (Steinberg)
Page 18

Provide that an employer shall maintain payroll records showing the number of piece-rate units earned by and any applicable piece rate paid to employees.

Provide that the civil penalty for an employer who willfully fails to maintain specified payroll records includes, in addition to records required by statute. records required by any applicable wage orders of the IWC. Revises the penalty for a violation of this section from $500 to $100 per employee for each payroll period, up to a maximum period of three years.

California Manufacturers & Technology Association opposes creating, "a new paycheck information requirement to be added to an already confusing document and would allow damage awards of up to $10,000. It would also establish a new penalty to keep certain payroll records and permit a penalty of $100 per employee for minor administrative errors where the employee suffered no harm."

Finally, the Engineering Contractors' Association. the Marin Builder's Exchange, the Sacramento Builders' Exchange, the Fence Contractors' Association, the Flasher/Barricade Association and the Seismic Gas Valve Manufacturers', sent a joint letter opposing AB 2509. While (we) strongly support any efforts to penalize employers who intentionally violate wage and hour laws, AB 2509 would go far beyond this by even penalizing the 'good' employers who make every effort to abide by the laws."

Support: California Professional Firefighters; Golden Gate University – School of Law, Women's Employment Rights Clinic; Equal Rights Advocates; Legal Aid Society of San Francisco, Employment Law Center; Transport Workers Union of America; California Rural Legal Assistance Foundation; California Conference Board of the Amalgamated Transit Union; Engineers and Scientists of California; Region 8 States Council of the United Food & Commercial Workers; Hotel Employees, Restaurant Employees International Union; California Conference of Machinists; Service Employees International Union; California Chapters of the National Electrical Contractors Association; California Legislative Conference of the Plumbing, Heating and Piping Industry; Western Wall & Ceiling Contractors Association; Air conditioning & Refrigeration Contractors Association; California Association of Sheet Metal and Air Conditioning Contractors. National Association; American Federation of State, County and Municipal Employees, AFL-CIO; California Teamsters, Public Affairs Council; California Labor Federation; La Raza Centro Legal, Inc.; Exotic Dancers Alliance; Asian Law Caucus; Mexican American Legal Defense and Education Fund

LEGISLATIVE INTENT SERVICE    (800) 666-1917

104

AB 2509 (Steinberg)
Page 19

Opposition:  Western Growers Association; California Retailers Association;
Civil Justice Association of California; California Grocers
Association; California Chamber of Commerce; Roofing
Contractors Association of California Associated General
Contractors and Associated General Contractors San Diego; Orange
County Business Council; Engineering Contractors' Association;
Marin Builders' Exchange; Sacramento Builders' Exchange; Fence
Contractors' Association; Flasher/Barricade Association; Seismic
Gas Valve Manufacturers'; California Manufacturers & Technology
Association; California Employment Law Council

<u>HISTORY</u>

Source:  California Labor Federation, AFL-CIO

Related Pending Legislation: None Known

Prior Legislation: AB 1652 (Steinberg), of 1999, vetoed; AB 633 (Steinberg),
Ch. 554, Stats. of 1999

Prior Vote: Assembly Labor and Employment Committee (6-3); Assembly
Floor (41-32); Senate Committee on Industrial Relations (4-1)

**********

LEGISLATIVE INTENT SERVICE    (800) 666-1917

**Exhibit E**

CONCURRENCE IN SENATE AMENDMENTS
AB 2509 (Steinberg)
As Amended August 25, 2000
Majority vote

ASSEMBLY:   41-32   (May 25, 2000)          SENATE:   22-14   (August 29, 2000)

Original Committee Reference:  L. & E.

SUMMARY: Revises statutes relating to the administrative and civil enforcement of wage and hour laws including wage collection and enforcement procedures before the Labor Commissioner (Commissioner).

The Senate amendments:

1) Delete provisions of this bill:

   a) Allowing the use of a notice in lieu of subpoena.

   b) Waiving judicial arbitration in wage claim appeals

   c) Specifying the right of the Commissioner to be awarded attorneys fees.

   d) Revising the provisions related to complaints of unlawful discrimination.

   e) Providing for wage liability for substantial shareholders in a corporation

   f) Providing for wage liability for a successor employer, as specified.

   g) Specifying computation of the number of employees where wage records are missing

   h) Related to use and application of a wage bond under Labor Code section 240

   i) Requiring posting of a workplace notice concerning specified labor law violations.

   j) Increasing civil penalties for an employer who fails to maintain specified payroll records.

   k) Allowing the Commissioner to award liquidated damages.

   l) Combining specified proceedings for wages and penalties before the Commissioner.

2) Reduce the damages that may be recovered by an employee for a knowing and intentional violation of itemized wage statement requirements from $ 100 per pay period, to $50 for the initial pay period, and $100 for each of the subsequent pay periods, and reduce the maximum aggregate penalty from $10,000 to $4,000. Delete the provision specifying that an employee may bring a complaint before the Commissioner or file a civil action for damages or

LIS - 16

LEGISLATIVE INTENT SERVICE   (800) 666-1917

penalties, and attorney's fees

5) State that the amendment to the provision related an award of attorneys fees for an employee in cases involving failure to pay minimum wage and overtime wages is declaratory of existing law.

4) Delete the provisions related to penalties for an employer who fails to provide a meal or rest period, and instead codify the lower penalty amounts adopted by the Industrial Welfare Commission (IWC).

5) Provide that in "bounced" payroll check cases, an employee cannot recover waiting time penalties if they also recover a service charge in a civil action, as specified

EXISTING LAW establishes a framework of administrative and civil remedies for violations of wage and hour laws. The administrative procedures include a Berman hearing before the Commissioner. On appeal, the courts review an order decision or award of the Commissioner through a de novo trial.

AS PASSED BY THE ASSEMBLY, this bill:

1) Provided that in an administrative wage claim proceeding (Berman hearing) before the Commissioner, a notice for production of documents may be used in lieu of subpoena.

2) Provided that the legal rate of interest on due and unpaid wages at a Berman hearing and in a civil action for wages shall be at the rate established by Civil Code Section 3289(b), which is 10%.

3) Provided that following a Berman hearing, an employer filing an appeal shall post an undertaking in the amount of the Commissioner's final order, decision or award  Provided that the requirement of judicial arbitration does not apply in such proceedings  Provided for Commissioner attorney fees in specified cases.

4) Provided for the Commissioner to take specified steps if the United States Department of Labor (Labor Department) determines that the Commissioner has erred in dismissing the complaint of an employee of unlawful retaliation. Provided that an employee may file a civil action for unlawful retaliation without first filing a discrimination claim before the Commissioner, and that the administrative limitation periods do not apply in a civil action.

5) Provided that the parent of and substantial shareholders in a corporation are jointly and severally liable with the corporation for unpaid wages and penalties. Provided that a successor, as defined, to an employer who owes wages to his or her former employees is liable for those wages

6) Provided for waiting time penalties in all industries rather than the building and construction trades when payroll checks are refused payment due to insufficient funds.

(800) 666-1917

LEGISLATIVE INTENT SERVICE 

7) Clarified that Labor Code Section 1194, which provides for an award of attorneys fees for an employee in cases involving failure to pay minimum wage and overtime wages, is separate from and not controlled by Labor Code Section 218.5, which provides for prevailing party attorneys fees in other wage cases

8) Provided that an employer's itemized wage statement shall include, among other information, the number of piecework units earned and any applicable piece rate if paid on a piecework basis, and for non-exempt employees, the applicable hourly rates in effect during the pay period and the hourly rate of pay and hours worked, where applicable. Provided, in the case of a knowing and intentional failure by an employer to comply with the itemized wage statement requirements. For an employee to recover a penalty of up to $100 per payroll period up to a maximum of $10,000  Provided that an employee may bring a complaint before the Commissioner or file a civil action for damages or penalties, and attorney's fees. Provided that an employer shall maintain payroll records showing the number of piece-rate units earned by and any applicable piece rate paid to employees

9) Provided that in a case where an employer fails to maintain records that identify each employee to whom wages are paid, penalties shall be computed by multiplying the number of employees employed on the date the penalty for the preceding year, unless the employer affirmatively establishes evidence that supports a lesser penalty based upon proof of a lesser number of affected employees

10) Provided for penalties for an employer who violates the requirement that no employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission (IWC)  Provided for penalties of $50 per employee per pay period and payment of an amount equal to twice the average hourly rate of compensation for the employee for the full length of the meal or rest period. Provided that an employee may bring a complaint before the Commissioner or file a civil action or for damages or penalties; and attorney's fees

11) Provided that in cases where the Commissioner orders an employer to post a bond, under specified conditions, and the bond shall cover such interest, penalties, or other demands, as well as unpaid wages

12) Provided that the Commissioner shall, under specified circumstances, order the employer to post a workplace notice describing the nature of a violation and related information

13) Provided that any amounts paid directly by a patron to a dancer employed by an employer subject to IWC Order No 5 or 10 shall be deemed a gratuity  Prohibited an employer from deducting from a gratuity indicated by a patron on a credit card slip any credit card payment processing fee or cost.

14) Provided that the civil penalty for an employer who willfully fails to maintain specified payroll records includes, in addition to records required by statute, records required by any applicable wage orders of IWC. Revised the penalty for a violation of this section from $500 to $100 per employee for each payroll period up to a maximum period of three years

LEGISLATIVE INTENT SERVICE   (800) 666-1917

AB 2509
Page 4

15) Provided that the liquidated damages for a violation of minimum wage laws may be awarded in a hearing before the Commissioner in the same manner as a civil action under current law

16) Provided that with respect to a claim for a failure to pay minimum wages, the Commissioner may, in the same proceeding, order both payment of wages owed, interest thereon, statutory liquidated damages and civil penalties

FISCAL EFFECT: According to the Assembly Appropriations Committee analysis, minor absorbable costs to the Department of Industrial Relations

COMMENTS:

1) The Senate amendments deleted many of the provisions of the bill, including the two most controversial provisions related to shareholder and successor liability. They also reduce the penalty increases for a "knowingly and willfully" violating itemized wage statement requirements, and add an election of remedies provision regarding bounced payroll checks

2) The remaining provisions include those related to: the legal rate of interest on wages; requiring an undertaking prior to an appeal of a final wage order; bounced payroll check penalties; including piece rate in itemized wage statements; meal and break period violations; and employee tipping issues

3) Some of the provisions of AB 2509 have been amended into AB 2857 (Steinberg) pending in the Senate. Others have been dropped and not included in either bill. Among the provisions dropped were several which codified existing case law relating to the right to file a civil action without filing an administrative claim and relating to attorney's fees.

Analysis Prepared by: Ralph Lightstone / L & E / (916) 319-2091

FN: 0006959

(800) 666-1917   LEGISLATIVE INTENT SERVICE

109

**Exhibit F**





STATE CAPITOL
P.O. BOX 942849
SACRAMENTO, CA 94248-0009
(916) 319-2009
FAX (916) 319-2109
DISTRICT OFFICE
915 L STREET
SUITE 110
SACRAMENTO, CA 95814
(916) 324-4676
FAX (916) 327-2238
Web Site:
www.democrats.assembly.ca.gov

**DARRELL STEINBERG**
ASSEMBLYMEMBER, NINTH DISTRICT
CHAIR, ASSEMBLY LABOR AND EMPLOYMENT COMMITTEE

COMMITTEES
· APPROPRIATIONS
· JUDICIARY
· NATURAL RESOURCES
· CHAIR, SELECT COMMITTEE ON
  NATIVE AMERICAN REPATRIATION
· SELECT COMMITTEE ON
  MENTAL HEALTH
· SELECT COMMITTEE ON
  JOBS-HOUSING BALANCE
· CHAIR, SELECT COMMITTEE ON
  LOW PERFORMING SCHOOLS

September 8, 2000

The Honorable Gray Davis
Governor, State of California
State Capitol
Sacramento, CA 95814

Dear Governor Davis:

I am writing to respectfully request that you sign AB 2509, a bill designed to ensure that workers receive the pay that they have earned and may collect unpaid wages in a fair and timely manner

AB 2509 does not raise the minimum wage, change overtime law, or establish new employee rights with respect to wages, hours, or working conditions. It is designed solely to enforce the existing laws in a fair manner to protect the rights of workers, legitimate employers, and taxpayers. This bill is sponsored by the California Labor Federation, AFL-CIO and a host of member unions

AB 2509 began as an omnibus bill to amend numerous wage and hour laws, but has now been pruned way back to remove the most controversial provisions and amend other provisions in response to opposition concerns  AB 2509 does the following:

1.  Clarifies method to calculate interest rates on unpaid wages

    Current law establishes the legal rate of interest on wages (10%) in labor commissioner hearings and court cases. This bill replaces outdated code sections in current law and cites the correct code sections for interest.

2.  Requires posting of an appeal bond to guarantee that wages will be paid

    Under current law, a worker may file a wage claim for unpaid wages with the Labor Commissioner (Commissioner), who holds a hearing on the matter. An employer who appeals the Commissioner's final decision to court is entitled to a de novo trial, which delays a final decision for a long period of time.  During that period, the employer may disappear or declare bankruptcy  The bill requires an employer who appeals the Commissioner's final decision to post an undertaking. This assures that the worker will

*PE-3*

LEGISLATIVE INTENT SERVICE    (800) 666-1917

be paid if the worker ultimately prevails in court. A similar provision applies to the garment industry under AB 633, Chapter 554, Statutes of 1999.

3.  Includes all workers in protection from intentionally-issued bounced-payroll checks.

This section was amended and limited in response to the veto message of AB 1652 last year. As amended, this section now provides that the employee cannot collect the penalty for a bounced payroll check, even if the employer's action is intentional, if the employee elects to sue and collects a penalty under existing section 1719 of the Civil Code. The amendment protects employers from being penalized twice. The penalty does not apply if the employer's failure was unintentional, is limited to a maximum of 30 days, and stops if the employer pays the worker before that time.

4.  Codifies case law regarding attorney's fees under two Labor Code sections.

Labor Code 1194 provides that in minimum wage and overtime cases a prevailing employee may collect attorney's fees. Labor Code section 218.5 provides for prevailing party attorney's fee in other wage cases. The bill amending section 1194 to establish the employee's right and protect the employee from defense fees in minimum wage and overtime cases only was signed into law by Governor Wilson. This bill codifies the holding of the Court in Early v. Superior Court which upheld this distinction.

5.  Includes piece rate and hourly wage information in itemized wage statements.

Current law requires employers to issue itemized wage statements to employees, and contains penalties if they violate the law. This bill includes "piece rate" and "hourly wage" information, where applicable, in the itemized wage statement and increases the penalties for those employers who "knowingly and intentionally" violate the law. Over the past two years, the Labor and Employment Committee has looked into underground economy activities in several industries. In each of these industries, piece rate pay was common to employers who were not paying minimum wages. This bill does not impose a significant burden on legitimate employers who pay by piece rate since they already track piece rate by employee in order to issue the proper paycheck.

6.  Codifies regulations establishing penalty for violation of meal and rest breaks.

As amended, this bill codifies the actions of the IWC establishing a penalty for an employer who violates the law requiring meal and break periods. Some have questioned the legal authority of the IWC to adopt this penalty. AB 2509, by codifying the IWC's penalty level, serves the goals of the sponsors of this measure by providing a remedy for a violation of the law (previously there was none) and ensuring that the IWC's actions will be legally sustainable. The bill as introduced had higher penalties, but has been amended to conform to the IWC levels.

PE-4

LEGISLATIVE INTENT SERVICE   (800) 666-1917

111

7.  <u>Protects the right of employees to retain their tips</u>.

The current law protects the right of employees to keep tips  This bill closes existing loopholes under which some employers in restaurants and dance clubs have been taking tips or portions of tips from employees.

I respectfully request that you sign this modest reform measure into law.  If you have any questions please do not hesitate to contact me.

Sincerely,

DARRELL STEINBERG

DS/bkh

LEGISLATIVE INTENT SERVICE    (800) 666-1917

PE-5

112

# PROOF OF SERVICE

STATE OF CALIFORNIA       )
                          )   ss
COUNTY OF LOS ANGELES     )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Winston & Strawn LLP, 333 South Grand Avenue, Los Angeles, CA 90071-1543. On August 15, 2006, I served the within document(s):

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT KMART CORPORATION'S MOTION FOR PARTIAL DISMISSAL AND MOTION TO STRIKE IMMATERIAL PORTIONS OF THE COMPLAINT**

| ☒ | by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below. |

## SEE ATTACHED SERVICE LIST

I am readily familiar with the firm's practice of collection and processing items for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing an affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 15, 2006, at Los Angeles, California.

*Rebecca L. Willis*
Rebecca L. Willis

Service List

Jose Garay, Esq.
Jose Garay, APLC
2030 Main Street, Suite 1300
Irvine, CA  92614
Telephone:  (949) 260-9193
Facsimile:   (949) 260-9194


Roger Carter, Esq.
The Carter Law Firm
2030 Main Street, Suite 1300
Irvine, CA  92614
Telephone:  (949) 260-4737
Facsimile:   (949) 260-4754


James R. Hawkins, Esq.
Gregory E. Mauro, Esq.
Hawkins & Sofonio
2030 Main Street, Suite 1300
Irvine, CA  92614
Telephone:  (949) 260-9191
Facsimile:   (949) 260-9192

LA:172316.1

-2-

**Exhibit G**

Assembly Bill No. 2509

CHAPTER 876

An act to amend Sections 98.1, 98.2, 203.1, 218.5, 226, 350, 351, and 1174 of, and to add Sections 218.6, and 226.7 to, the Labor Code, relating to employment.

[Approved by Governor September 28, 2000. Filed with Secretary of State September 29, 2000.]

LEGISLATIVE COUNSEL'S DIGEST

AB 2509, Steinberg.  Employment: remedies for employment law violations.

Existing law authorizes the Labor Commissioner to conduct administrative hearings and issue orders, decisions, and awards for recovery of wages, penalties, and other demands for compensation properly before the Division of Labor Standards Enforcement or the commissioner. Existing law requires these awards for unpaid wages to accrue interest at a specified adjusted annual rate determined under the tax laws.

This bill would instead require this rate to be the same as the legal rate of interest payable upon a contract obligation in default where the contract does not otherwise specify the rate of interest.

Existing law provides that any order, decision, or award made by the Labor Commissioner in these administrative proceedings may be appealed by filing an action in the municipal or superior court.

This bill would require employers filing such an appeal to post a prescribed undertaking and would provide for disposition thereof.

Under existing law, an employer in the building and construction industry is liable for a penalty of up to 30 days' wages and fringe benefits to any employee paid by a check, draft, or voucher that is drawn on a nonexistent account or that is dishonored for insufficient funds if the instrument is presented for payment within 30 days of receipt. This penalty does not apply if the employer can establish that the violation was unintentional.

This bill would make this penalty applicable to all employers, as specified, and would make related conforming and technical, nonsubstantive changes.

Under existing law, the prevailing party, with certain exceptions, is entitled to an award of attorney's fees in an action brought for nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions.

This bill would add an express exception for employee actions to recover underpayment of the minimum wage or specified overtime wages, in which a prevailing employee but not the employer is

93

4

expressly authorized to recover attorney's fees The bill would also require the court, in an action to recover unpaid wages, to award interest, as specified.

Under existing law, employers are required to provide employees semimonthly, with payment of wages, an itemized statement listing gross wages, total hours worked by employees paid by the hour, specified deductions, net wages, and certain other information Violation of these requirements is a misdemeanor. Under existing law, an employee suffering injury as a result of the employer's knowing or intentional failure to comply with this requirement is entitled to recover the greater of actual damages or $100, plus costs and reasonable attorney's fees

This bill would provide that total hours need not be disclosed for salaried employees exempt from payment of overtime compensation The bill would impose a state-mandated local program by requiring disclosure of the number of piece-rate units and the applicable piece rate for employees paid on that basis and by requiring disclosure of all applicable hourly rates and the number of hours worked by the employee at each rate The bill would revise the liability of employers for knowing or intentional noncompliance with this disclosure requirement to entitle an aggrieved employee to recover the greater of actual damages or penal damages of $50 for the initial pay period in which a violation occurs and $100 per employee for each subsequent pay period in which the violation occurs up to $4,000, plus costs and reasonable attorney's fees

Existing law authorizes the Industrial Welfare Commission to adopt orders respecting wages, hours, and working conditions

This bill would require any employer that requires any employee to work during a meal or rest period mandated by an order of the commission to pay the employee one hour's pay for each workday that the meal or rest period is not provided

Existing law prohibits employers from receiving or deducting gratuities intended for employees from wages otherwise payable Violation is a misdemeanor. Under existing law, this prohibition is not applicable to an employee that has a guaranteed wage or salary that is at least the higher of the federal or state minimum wage

This bill would delete the above exemption, thereby imposing a state-mandated local program As so revised, the bill would make these provisions applicable to amounts paid by patrons directly to a dancer subject to specified orders of the commission The bill would also impose a state-mandated local program by requiring employers to remit to their employees gratuities paid by credit card, without deduction for credit card fees, not later than the next regular payday following the date the credit card payment is authorized by the patron

Existing law requires employers to keep specified payroll records

93

5

This bill would require these payroll records to identify the number of piece-rate units earned by employees and any applicable piece rate paid to employees

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state Statutory provisions establish procedures for making that reimbursement

This bill would provide that no reimbursement is required by this act for a specified reason

*The people of the State of California do enact as follows*

SECTION 1   Section 98 1 of the Labor Code is amended to read:

98 1   (a) Within 15 days after the hearing is concluded, the Labor Commissioner shall file in the office of the division a copy of the order, decision, or award. The order, decision, or award shall include a summary of the hearing and the reasons for the decision Upon filing of the order, decision, or award, the Labor Commissioner shall serve a copy of the decision personally or by first-class mail on the parties The notice shall also advise the parties of their right to appeal the decision or award and further advise the parties that failure to do so within the period prescribed by this chapter shall result in the decision or award becoming final and enforceable as a judgment by the appropriate municipal or superior court. in accordance with the appropriate rules of jurisdiction.

(b) For the purpose of this section. an award shall include any sums found owing, damages proved, and any penalties awarded pursuant to this code

(c) All awards granted pursuant to a hearing under this chapter shall accrue interest on all due and unpaid wages at the same rate as prescribed by subdivision (b) of Section 3289 of the Civil Code. The interest shall accrue until the wages are paid from the date that the wages were due and payable as provided in Part 1 (commencing with Section 200) of Division 2

SEC 2   Section 98.2 of the Labor Code is amended to read:

98.2   (a) Within 10 days after service of notice of an order, decision. or award the parties may seek review by filing an appeal to the municipal or superior court, in accordance with the appropriate rules of jurisdiction, where the appeal shall be heard de novo A copy of the appeal request shall be served upon the Labor Commissioner by the appellant For purposes of computing the 10-day period after service, Section 1013 of the Code of Civil Procedure shall be applicable

(b) Whenever an employer files an appeal pursuant to this section, the employer shall post an undertaking with the reviewing court in the amount of the order, decision. or award The undertaking shall consist of an appeal bond issued by a licensed surety or a cash

93

6

deposit with the court in the amount of the order, decision, or award The employer shall provide written notification to the other parties and the Labor Commissioner of the posting of the undertaking The undertaking shall be on the condition that, if any judgment is entered in favor of the employee, the employer shall pay the amount owed pursuant to the judgment, and if the appeal is withdrawn or dismissed without entry of judgment, the employer shall pay the amount owed pursuant to the order, decision, or award of the Labor Commissioner unless the parties have executed a settlement agreement for payment of some other amount, in which case the employer shall pay the amount that the employer is obligated to pay under the terms of the settlement agreement If the employer fails to pay the amount owed within 10 days of entry of the judgment, dismissal, or withdrawal of the appeal, or the execution of a settlement agreement, a portion of the undertaking equal to the amount owed, or the entire undertaking if the amount owed exceeds the undertaking, shall be forfeited to the employee

(c) If the party seeking review by filing an appeal to the municipal or superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal

(d) If no notice of appeal of the order, decision, or award is filed within the period set forth in subdivision (a), the order, decision, or award shall, in the absence of fraud, be deemed the final order

(e) The Labor Commissioner shall file, within 10 days of the order becoming final pursuant to subdivision (d), a certified copy of the final order with the clerk of the municipal or superior court, in accordance with the appropriate rules of jurisdiction, of the appropriate county unless a settlement has been reached by the parties and approved by the Labor Commissioner Judgment shall be entered immediately by the court clerk in conformity therewith The judgment so entered shall have the same force and effect as, and shall be subject to all of the provisions of law relating to, a judgment in a civil action, and may be enforced in the same manner as any other judgment of the court in which it is entered Enforcement of the judgment shall receive court priority

(f) In order to ensure that judgments are satisfied, the Labor Commissioner may serve upon the judgment debtor, personally or by first-class mail at the last known address of the judgment debtor listed with the division, a form similar to, and requiring the reporting of the same information as, the form approved or adopted by the Judicial Council for purposes of subdivision (a) of Section 116 830 of the Code of Civil Procedure to assist in identifying the nature and location of any assets of the judgment debtor

The judgment debtor shall complete the form and cause it to be delivered to the division at the address listed on the form within 35

93

7

days after the form has been served on the judgment debtor, unless the judgment has been satisfied. In case of willful failure by the judgment debtor to comply with this subdivision, the division or the judgment creditor may request the court to apply the sanctions provided in Section 708.170 of the Code of Civil Procedure.

(g) Notwithstanding subdivision (e), the Labor Commissioner may stay execution of any judgment entered upon an order, decision, or award that has become final upon good cause appearing therefor and may impose the terms and conditions of the stay of execution. A certified copy of the stay of execution shall be filed with the clerk entering the judgment.

(h) When a judgment is satisfied in fact, otherwise than by execution, the Labor Commissioner may, upon the motion of either party or on its own motion, order entry of satisfaction of judgment. The clerk of the court shall enter a satisfaction of judgment upon the filing of a certified copy of the order.

(i) The Labor Commissioner shall make every reasonable effort to ensure that judgments are satisfied, including taking all appropriate legal action and requiring the employer to deposit a bond as provided in Section 240.

(j) The judgment creditor, or the Labor Commissioner as assignee of the judgment creditor, shall be entitled to court costs and reasonable attorney fees for enforcing the judgment that is rendered pursuant to this section.

SEC. 3.   Section 203.1 of the Labor Code is amended to read:

203.1   If an employer pays an employee in the regular course of employment or in accordance with Section 201, 201.5, 201.7, or 202 any wages or fringe benefits, or both, by check, draft or voucher, which check, draft or voucher is subsequently refused payment because the employer or maker has no account with the bank, institution, or person on which the instrument is drawn, or has insufficient funds in the account upon which the instrument is drawn at the time of its presentation, so long as the same is presented within 30 days of receipt by the employee of the check, draft or voucher, those wages or fringe benefits, or both, shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced. However, those wages and fringe benefits shall not continue for more than 30 days and this penalty shall not apply if the employer can establish to the satisfaction of the Labor Commissioner or an appropriate court of law that the violation of this section was unintentional. This penalty also shall not apply in any case in which an employee recovers the service charge authorized by Section 1719 of the Civil Code in an action brought by the employee thereunder.

SEC. 4.   Section 218.5 of the Labor Code is amended to read:

218.5   In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the

93

8

court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action This section shall not apply to an action brought by the Labor Commissioner This section shall not apply to a surety issuing a bond pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code or to an action to enforce a mechanics lien brought under Chapter 2 (commencing with Section 3109) of Title 15 of Part 4 of Division 3 of the Civil Code

This section does not apply to any action for which attorney's fees are recoverable under Section 1194

SEC. 5    Section 218.6 is added to the Labor Code, to read:

218.6   In any action brought for the nonpayment of wages, the court shall award interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the Civil Code, which shall accrue from the date that the wages were due and payable as provided in Part 1 (commencing with Section 200) of Division 2

SEC 6    Section 226 of the Labor Code is amended to read:

226    (a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions. provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee

The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California

An employer that is required by this code or any regulation adopted pursuant to this code to keep the information required by this section shall afford current and former employees the right to

93

inspect or copy the records pertaining to that current or former employee, upon reasonable request to the employer The employer may take reasonable steps to assure the identity of a current or former employee If the employer provides copies of the records, the actual cost of reproduction may be charged to the current or former employee

This section does not apply to any employer of any person employed by the owner or occupant of a residential dwelling whose duties are incidental to the ownership, maintenance, or use of the dwelling, including the care and supervision of children, or whose duties are personal and not in the course of the trade, business, profession, or occupation of the owner or occupant

(b) Any employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) shall be entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and shall be entitled to an award of costs and reasonable attorney's fees

(c) This section does not apply to the state, or any city, county, city and county, district, or any other governmental entity.

SEC. 7   Section 226 7 is added to the Labor Code, to read:

226 7   (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

SEC 8.   Section 350 of the Labor Code is amended to read:

350   As used in this article, unless the context indicates otherwise:

(a) "Employer" means every person engaged in any business or enterprise in this state that has one or more persons in service under any appointment, contract of hire, or apprenticeship, express or implied, oral or written, irrespective of whether the person is the owner of the business or is operating on a concessionaire or other basis

(b) "Employee" means every person, including aliens and minors, rendering actual service in any business for an employer, whether gratuitously or for wages or pay, whether the wages or pay are measured by the standard of time, piece, task, commission, or other method of calculation, and whether the service is rendered on a commission, concessionaire, or other basis

(c) "Employing" includes hiring, or in any way contracting for, the services of an employee

93

10

(d) 'Agent" means every person other than the employer having the authority to hire or discharge any employee or supervise, direct, or control the acts of employees

(e) "Gratuity" includes any tip, gratuity, money, or part thereof that has been paid or given to or left for an employee by a patron of a business over and above the actual amount due the business for services rendered or for goods, food, drink, or articles sold or served to the patron Any amounts paid directly by a patron to a dancer employed by an employer subject to Industrial Welfare Commission Order No 5 or 10 shall be deemed a gratuity

(f) "Business" means any business establishment or enterprise, regardless of where conducted

SEC 9   Section 351 of the Labor Code is amended to read:

351   No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for An employer that permits patrons to pay gratuities by credit card shall pay the employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for any credit card payment processing fees or costs that may be charged to the employer by the credit card company Payment of gratuities made by patrons using credit cards shall be made to the employees not later than the next regular payday following the date the patron authorized the credit card payment.

SEC 10.   Section 1174 of the Labor Code is amended to read:

1174   Every person employing labor in this state shall:

(a) Furnish to the commission, at its request, reports or information that the commission requires to carry out this chapter. The reports and information shall be verified if required by the commission or any member thereof.

(b) Allow any member of the commission or the employees of the Division of Labor Standards Enforcement free access to the place of business or employment of the person to secure any information or make any investigation that they are authorized by this chapter to ascertain or make. The commission may inspect or make excerpts, relating to the employment of employees, from the books, reports, contracts, payrolls, documents, or papers of the person

(c) Keep a record showing the names and addresses of all employees employed and the ages of all minors

(d) Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate

93

11

— 9 —                                    Ch 876

paid to, employees employed at the respective plants or
establishments. These records shall be kept in accordance with rules
established for this purpose by the commission, but in any case shall
be kept on file for not less than two years.

SEC 11   The amendments to Section 2185 of the Labor Code
made by Section 4 of this act do not constitute a change in, but are
declaratory of, the existing law, and these amendments are intended
to reflect the holding of the Court of Appeal in Early v Superior
Court (2000) 79 Cal App 4th 1420.

SEC 12   No reimbursement is required by this act pursuant to
Section 6 of Article XIII B of the California Constitution because the
only costs that may be incurred by a local agency or school district will
be incurred because this act creates a new crime or infraction,
eliminates a crime or infraction, or changes the penalty for a crime
or infraction, within the meaning of Section 17556 of the Government
Code, or changes the definition of a crime within the meaning of
Section 6 of Article XIII B of the California Constitution

O

93

12