IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD CASTLE, *et al*., | No. C 06-4347 SI |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION UNDER FLSA** |
| v. | |
| WELLS FARGO FINANCIAL, INC., d/b/a WELLS FARGO FINANCIAL AND WELLS FARGO FINANCIAL ACCEPTANCE, AND DOES 1-50, | |
| Defendants. | |

On November 2, 2007, the Court heard argument on plaintiffs' motion for conditional certification under the Fair Labor Standards Act, 29 U.S.C. § 216(b). After consideration of the parties' arguments, the Court DENIES the motion for the reasons set forth below.

**BACKGROUND**

Plaintiffs are current[1] and former employees of Wells Fargo who work in four job categories: (1) credit manager, (2) senior credit manager, (3) assistant manager, and (4) loan processor. Plaintiffs are classified as non-exempt employees, and thus are entitled to be paid overtime.[2] SAC ¶ 33. Plaintiffs allege that during the class period they have worked in excess of 40 hours per week, but that they have

---

[1] Although the proposed second amended complaint alleges that the case is brought on behalf of current and former employees, the named plaintiffs are all former employees. SAC ¶¶ 5-8. As the Court is granting plaintiffs' motion to file a second amended complaint, this order refers to that complaint.

[2] The parties refer to this as an "off the clock" case, as opposed to a "job classification" case.

not been paid the appropriate overtime compensation for all the hours worked in excess of 40. *Id*. ¶ 34. Plaintiffs also allege that "[b]y failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective Class, Defendant has failed to make, keep, and preserve records with respect to each of employees sufficient to determine their wages, hours, and other conditions and practice of employment." *Id*. ¶ 35.

Plaintiffs seek conditional certification of a nationwide collective class under the FLSA. According to defendants, the class includes approximately 14,000 individuals. In support of their motion, plaintiffs have submitted 24 declarations by plaintiffs and putative class members describing their experiences working at Wells Fargo. These declarants worked in 28 of the 1000 branches nationwide, and in 8 of the 48 states where Wells Fargo subsidiaries operate. Some of plaintiffs' declarants state that they recorded overtime hours worked, and that their managers later altered their time records. Other declarants state that they were told not to record overtime hours, and that they were promised flex time instead. Plaintiffs have also submitted deposition excerpts, and evidence regarding Wells Fargo's "Webtime" program, which is a web-based application that non-exempt Wells Fargo employees use to enter timecard information.

Defendants oppose certification on numerous grounds, and have submitted 99 declarations from current and former Wells Fargo employees and managers. These declarations generally rebut plaintiffs' declarations. Defendants have also submitted copies of plaintiffs' declarants' time cards and pay records, which show that plaintiffs and the declarants were in fact paid for overtime on some occasions.

**DISCUSSION**

Plaintiffs seek certification of a collective action for their claim under the FLSA for failure to pay overtime wages. Plaintiffs propose certification of the following opt-in class:

> All persons who are or have been employed by Defendant as credit manager, senior credit manager, assistant manager, or loan processor within the United States at any time three years prior to the filing of this Complaint, to the final disposition of this case.

SAC ¶ 15.

Section 216(b) of the FLSA provides that one or more employees may bring a collective action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

"[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.) (internal citation and quotation omitted), *cert. denied*, 519 U.S. 982 (1996). Plaintiffs bear the burden of demonstrating a "reasonable basis" for their claim of class-wide discrimination. *See id.* at 1097. "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (internal citation and quotation omitted).

Defendant asserts that there are numerous individual issues that make certification inappropriate, and the Court agrees.[3] Plaintiffs have not identified a common policy or practice on a nationwide or statewide basis, and indeed the official written policy at Well Fargo is to pay overtime to non-exempt employees. Instead, plaintiffs allege that they have been denied overtime pay for "off the clock" hours worked under a variety of different circumstances. The declarations submitted by plaintiffs state, *inter alia*,

- Daniel Beaston: One of his managers enforced a "company policy" that allowed Beaston and his colleagues to record no more than 41 hours per week in the Webtime system, regardless of how much time he worked. Each of Beaston's managers told him (incorrectly) that he was a salaried employee who was not entitled to overtime pay. Beaston's manager required Beaston and his colleagues to work one Saturday per month for five hours, and instructed Beaston not to record these hours.

- Darius Brown: Brown consistently worked over 40 hours per week, and he was not compensated for overtime hours. "I was told that the credit industry is a very sales-driven and demanding industry which requires one to work over 40 hours in a week to make money and complete all of the necessary work associated with closing loans." One of Brown's managers "always instructed us to focus on the sales and work as many hours as it took to complete deals. Mr. Gundeara explained that we should not worry about the extra hours and that the sales would pay off. As a result, I did not record the extra hours I worked in the Webtime system, though Mr. Gundeara usually saw me working the overtime hours and I always made him aware when I worked overtime." Brown states that he can recall instances when his manager ordered pizza for him and his colleagues when they worked later into the evening, and that the manager "often tried to encourage us to work unpaid overtime by stating, 'Let's all stay late tonight to see who can complete the most deals.'"

---

[3] Defendant has submitted numerous declarations contradicting the accounts set forth in plaintiffs' declarations. To resolve the instant motion, the Court need not resolve these factual disputes, and indeed it would be inappropriate to do so. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982). Here, even assuming that plaintiffs' declarations are accurate, those declarations describe a variety of different factual situations giving rise to plaintiffs' claims such that individual issues predominate.

- Richard Castle: Castle consistently worked over 40 hours per week. "When I complained about denied overtime pay, my supervisor, Khaled El-Zahar, would agree to sign off on half an hour here, and a half an hour there of overtime, but not more. Nothing ever seemed to come of my complaints about denied overtime pay. It was my impression from my interactions with Mr. El-Zahar that his supervisor, Kevin Guglielmelli, who I believe was the District Manager, needed to make sure that the payroll costs were not too high." "The way it worked was that we (the credit managers) would log into the timekeeping system via the Internet. I observed that my colleagues and I usually would record the whole week at one time. If I reflected on my timesheet that I had stayed until 7:00 p.m. on a particular day, Mr. El-Zahar would sometimes question the entry, and he would tell me to just include, say, half an hour of overtime for the day. It was a negotiation about how much overtime I could be paid for the time I had worked."

- Camila Dizon: While Dizon was at the Northridge branch, her manager "adjusted timekeeping records to reduce the amount of overtime claimed by employees." While Dizon was at the San Fernando branch, "if I tried to record more than 12 hours worked in a day (which occurred a few times a month), the 'Web time' program would show an error message and we would have to adjust the time yet again to reflect breaks that were non-existent in order to complete our time sheets – though I had, in fact, worked more than 12 hours, and should have received double compensation for this time over 12 hours." "At the point when we entered our time, we or our managers would alter or override the hours recorded to reflect reduced hours that did not require special overtime or meal/rest period consideration." "Sometimes I would have to go to a customer's house to Notarize a loan and Ms. Quintenilla [the manager] would comment that she did not feel it should have taken me as long as it did, and that I should adjust my hours to reflect less time worked – rather than the actual time worked. I do not believe I was fully compensated for all of the overtime I worked – for example, I was not paid for the hours I worked through lunch and breaks, and was never paid double-time when I worked over 12 hours."

- Jonathan Nguyen: "On average, I worked approximately 15 hours of overtime a week. Even though I recorded those hours, Mr. Rios [the manager] would tell me to change my hours in 'Webtime' to reflect a much lower number of overtime hours. I could usually record two or three hours of overtime, but not all of the hours I worked." "Mr. Rios and my district manager Chris Potts explained that the reason they did not want employees recording all of their overtime was that overtime would cut into the profitability of the branch. These managers explained that employees working overtime and taking breaks would cost the branch a great deal of money and would eventually negatively affect the overall profits of the branch in the long run." "When sales and production numbers were low, I was aware that Mr. Potts often instructed Mr. Rios to inform all of the employees in my branch (via email or telephone call) that we would be required to work longer hours or work on the weekends in order to increase the number of sales."

- Claudia Salazar: Salazar's manager "explained that the District Manager only allotted a limited number of overtime hours each month to each branch. Thus, he explained that company's policy towards paying overtime was that employees were allowed to record a maximum of five hours of overtime per week . . . ." "The amount of overtime for which I would be compensated was not only based on the policy that I could only work five hours of overtime a week, but supposedly also depended on performance. For example, if Mr. Sontag considered my sales productivity to be too low, he would not allow me to record overtime hours until my sales numbers improved."

- Steve Simoulis: "Each week, I worked approximately four hours of overtime for which I was never compensated. Specifically, in addition to the several nights per week that

4

> I worked, unpaid, past my scheduled finish time to complete a deal, I was not compensated for taking 'bank drops' (i.e. taking deposits to the bank) or dropping checks off at various vendors. These errands usually took approximately 10 to 20 minutes per day at least four times per week." "Whenever I recorded the hours I had actually worked during the week, including overtime and missed meal or rest periods, Ms. Latta [the manager] instructed me to remove the extra hours from the time sheet. If I did not, she explained that she would not approve my hours worked." "Whenever I questioned Ms. Latta about the company's overtime and meal/rest break policies generally, she never gave me a straight answer. She usually responded by telling me 'not to worry about it' and to 'get back to work.' Ms. Latta claimed it was the District Manager's 'policy' to deny us overtime and compensation for missed meal and rest periods."

- <u>Steve Youmans</u>: "During my employment with Wells Fargo Financial, Inc., my manager Sherry Jones enforced what she described as the 'company policy' that in order to leave the office by 6:00 p.m., my coworkers and I were required to have contacted at least eight individuals for potential loans, and to have completed two loan applications. Ms. Jones sent frequent emails or made phone calls to us enforcing this 'policy.' If we failed to meet these standards, which was often difficult to do, we were not allowed to leave the office until we had done so. We also came in on weekends, at least once a month, to work 4 hour shifts. We were not compensated for the time we worked after 6:00 p.m. or on weekends, which amounted to approximately 12 to 16 hours a month." Youmans' manager told him that "the company would not pay overtime to newer employees, regardless of how much we worked." "There were occurrences when I worked overtime and my manager 'contested' my time sheet or adjusted my hours herself to reflect only 40 hours a week."

- <u>Lindsay Wise</u>: "I worked approximately four hours of overtime each week, often staying after work to close loans, plus several working lunches a month. However, Mr. Carter instructed my coworkers and I to not record more than 42 hours on our time sheets. He explained that it was the 'policy of the company' to only permit 42 hours a week to be recorded on our time sheets."

If these plaintiffs are able to prove these assertions, as a matter of fact, they each have strong FLSA claims and are likely to prevail on an individual basis. However, the Court finds that plaintiffs have not identified any company-wide policy or practice to deny overtime and thus have failed to show that the various Wells Fargo employees are similarly situated for purposes of class certification. It is true that the declarants all state that they were not paid for some amount of overtime worked, and that they were pressured by their managers not to record overtime hours. However, the declarants describe differing "company policies." For example, Claudia Salazar was told that it was "company policy" to pay a maximum of 5 overtime hours per week, while Lindsay Wise was limited to 2 hours of overtime per week and Daniel Beaston was allowed 1 overtime hour per week. Steve Youmans was told that new employees were not paid overtime hours. At the most, plaintiffs' evidence suggests differing "policies" or practices depending on the branch or the district, rather than on a nationwide basis.

The variety of different circumstances under which the declarants were allegedly required to

5

work unpaid overtime also weighs against certification. Some employees were required to work on Saturdays, one employee was not paid for discrete tasks such as "bank drops," another employee's manager reduced her time spent notarizing documents, and another employee was not permitted to record overtime hours if her manager considered her sales productivity to be low. Resolution of plaintiffs' claims would require individualized determinations, and would necessitate testimony from individual employees and their supervisors about the schedules actually worked and whether managers were aware of the overtime hours worked. Plaintiffs' claims of altered time cards would similarly require class member-specific testimony and evidence regarding the circumstances surrounding the alterations, and defendant would be entitled to show that any alterations were made for legitimate reasons, which could differ for each class member.

Other courts have denied certification under the FLSA in "off the clock" cases, finding that individual issues predominate such that the employees are not similarly-situated. *See, e.g.*, *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 U.S. Dis. LEXIS 5002, *24-25 (S.D. Tex. Jan. 24, 2007) (denying certification because "this is a case involving claims of 'off the clock' unpaid overtime, where allegedly dozens (if not hundreds) of different low-level supervisors with wide management discretion in practice violate Defendant's clear, lawful written policies at some or many of Defendant's more than one hundred different retail locations."); *Hinojos v. The Home Depot, Inc.*, No. 2:06-CV-00108, 2006 WL 3712944 (D. Nev. Dec. 1, 2006) (denying certification of nationwide FLSA class alleging unpaid overtime hours and alteration of time cards because plaintiffs did "not point to a common policy or practice on a nationwide, or even statewide, basis" and "the need for individualized determinations to resolve the claims of each plaintiff"); *see also Lawrence v. Philadelphia*, No:03-CV-4009, 2004 U.S. Dist. LEXIS 8445, *2 (E.D Pa. Apr. 29, 2004).

The cases relied on by plaintiffs are factually distinguishable. The "job classification" cases in which exempt employees challenged their exempt status are much more amenable to collective treatment because there the plaintiffs are challenging class-wide policies regarding job classification, and evaluation of the plaintiffs' claims depends on common proof. *See, e.g.*, *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2007 WL 707475 (N.D. Cal. Mar. 6, 2007) (Conti, J.); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91 (S.D.N.Y. 2003); *Champneys v. Ferguson Enter. Inc.*, No: IP 02-

1  535-C, 2003 U.S. Dist. LEXIS 4589 (S.D. Ind. Mar. 11, 2003).

Of the "off the clock" cases in which classes have been conditionally certified, *Wilks v. Pep Boys*, 2006 WL 2821700 (M.D. Tenn. Sept. 26, 2006), is the most analogous to the instant one. In that case, the plaintiffs alleged that Pep Boys had an unwritten company-wide policy of "shaving" off overtime hours from employees' time records. The court conditionally certified a nationwide class, and later denied the defendant's motion to decertify and granted partial summary judgment in favor of the plaintiffs. Notably – and in contrast to the instant case – in *Wilks* "the defendant's own submissions indicate that its stores' time-keeping and overtime practices were dictated at the national level, rather than in each different locality." *Id*. at *6. The *Wilks* court noted, "[t]he demonstration of an allegedly improper practice that existed throughout the defendant's stores distinguishes this case from many of the otherwise factually similar cases cited by the defendant." *Id*.

The other cases cited by plaintiffs are also distinguishable. In *Heckler v. DK Funding LLC*, 502 F. Supp. 2d 777 (N.D. Ill. 2007), the plaintiff employees all worked at one location. In *Burch v. Qwest Communications International*, *Inc.*, 500 F. Supp. 2d 1181 (D. Minn. 2007), the plaintiffs claimed that they were required to perform a standard set of job duties before and after their shifts for which they were not paid. The *Burch* court found that class members were similarly situated because of the "allegation of an identical task that all potential class members had to perform before 'punching in' for work, like the requirement in this case that all employees had to boot up their computers before logging into their telephones." *Id*. at 1188; *see also Sherrill v. Sutherland Global Services, Inc.*, 487 F. Supp. 2d 344 (W.D.N.Y. 2007) (conditionally certifying class where plaintiffs alleged they were required to arrive early to work to perform certain unpaid tasks before beginning of shift). Unlike *Burch* or *Sherrill*, plaintiffs here are not claiming that they are subject to a company-wide policy requiring them to routinely perform certain tasks "off the clock." Instead, plaintiffs allege that they have been required to work unpaid overtime in a variety of different factual circumstances.

Because the Court concludes that conditional certification is inappropriate for the reasons set forth above, the Court need not address defendant's other grounds for opposing certification. In addition, the Court does not address the parties' evidentiary objections, nor does the Court address defendant's objections to plaintiffs' form of class notice.

7

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for conditional certification. (Docket No. 189).

**IT IS SO ORDERED.**

Dated: February 20, 2008

SUSAN ILLSTON
United States District Judge